IN THE MATTER OF: KAYLA DESTINY GREENE

No. COA01-1401

(Filed 20 August 2002)

**1. Termination of Parental Rights— child abuse— Munchausen Syndrome by Proxy—fabrication of medical problems**

The trial court's termination of respondent mother's parental rights for abuse of the child was supported by clear, cogent and convincing evidence that respondent suffers from Munchausen Syndrome by Proxy; that respondent's intentional actions created a substantial risk of serious physical injury to her child in that, during the two years prior to the child being removed from respondent's home, respondent subjected the child to 25 difference emergency room visits, 60 office visits to pediatricians, 143

prescriptions, and 8 admissions to the hospital; that respondent fabricated and exaggerated the child's medical problems to medical personnel; and that there was a strong probability of a repetition of abusive behavior because respondent has failed to make any substantial improvements to correct the conditions that led to the child being removed from her custody. N.C.G.S. §§ 7B-101(1)(b), 7B-1111(a)(1).

**2. Termination of Parental Rights— best interest of child— consideration by court**

The trial court did not err by concluding that it was in a child's best interest to terminate parental rights where the court's 199 findings demonstrate that the court thoroughly considered the child's best interests.

**3. Termination of Parental Rights— sealed records—reviewed in camera**

The trial court did not err by excluding from a termination of parental rights proceeding documents within DSS files where the trial court inspected the records in camera and turned over to respondent those documents it deemed relevant and material. The remaining, sealed documents were reviewed on appeal and found to shed no light on respondent's ability to care for the child and retain her parental rights.

Appeal by respondent from order entered 12 March 2001 by Judge Christopher W. Bragg in Richmond County District Court. Heard in the Court of Appeals 12 June 2002.

*Deane, Williams & Deane, by Jason T. Deane, for petitioner-appellee Richmond County Department of Social Services.*

*Amanda L. Wilson, attorney advocate for guardian ad litem.*

*Kenneth A. Swain, for respondent-appellant.*

*John D. Sullivan, attorney advocate for guardian of respondent.*

CAMPBELL, Judge.

Respondent, Dawn Marie Hook Greene, is the mother of one minor child, Kayla Destiny Greene ("Kayla"), born on 9 June 1995. Kayla's father is James Steven Greene. His parental rights were terminated by the Richmond County District Court on 27 November 2000 and are not at issue in this appeal.

On 11 July 1997, one of the child's pediatricians contacted the Richmond County Department of Social Services ("DSS") to determine whether Kayla was being abused or neglected by respondent. This contact was initiated based on the following:

11. That between the dates of June 17, 1995 and June 16, 1997, the minor child was taken to a hospital emergency room on twenty-five different visits by the Respondent mother; that the Respondent mother complained of [numerous] medical conditions involving the minor child . . . .

12. That during the same period from June 17, 1995 to June 16, 1997, the minor child was admitted to the hospital on eight occasions by the Respondent mother after the Respondent mother described symptoms and responses of the baby to medical providers.

13. That during the same period from June 17, 1995 to June 16, 1997, the Respondent mother had the minor child seen by three different pediatricians and two specialists; that pediatricians . . . diagnosed Munchausen Syndrome by Proxy.

14. That during the same period from June 17, 1995 to June 16, 1997, the Respondent mother had made sixty office visits to pediatricians for the minor child and had obtained one hundred and forty-three prescriptions for the minor child.

15. That between the periods of June 17, 1995 and June 16, 1997, the Respondent mother had fabricated and exaggerated medical problems of the minor child to numerous medical personnel in ER rooms, doctor's offices, and through daily phone calls to pediatricians.

Following DSS' involvement, a full medical examination of the child was completed. Based on the results of that examination, several medical providers concluded that respondent suffered from Munchausen Syndrome by Proxy ("MSBP"), a disorder "characterized by a pattern of marked overreaction by the Respondent mother to the minor child's imagined or, usually, minor medical problems[.]" Despite there being no evidence that respondent induced Kayla's injuries, there was direct evidence that respondent fabricated and exaggerated the child's medical problems to medical personnel. Such actions and the numerous prescriptions for the child obtained during a two-year period indicated to DSS that Kayla had received inadequate supervision and was substantially at risk of being overmed-

IN RE GREENE

[152 N.C. App. 410 (2002)]

icated and physically injured. Thus, the child was placed in the legal custody of DSS and in foster care (under the direction and supervision of DSS) on 24 February 1998 after all other placement alternatives suggested by respondent were exhausted.

Respondent and DSS executed a reunification plan on 19 March 1998. This plan required respondent to participate in mental health therapy, parenting classes, an evaluation of her parenting skills, a psychological evaluation, and visitation with Kayla. However, by 13 August 1998, even though respondent had continued to adhere to the requirements of the reunification plan, she had made no substantial improvements nor had she met any of the goals she had set for herself in therapy. Therefore, on 9 February 1999, the court ordered DSS to locate an examiner to complete a forensic psychological evaluation of respondent to determine if reasonable efforts were being made to correct the conditions which led to the child's removal from respondent's home. Prior to the evaluation being conducted, the court suspended respondent's visitation with Kayla on 4 May 1999 based on the opinions of respondent's therapist and respondent's inability to apply the improvement techniques she learned in therapy. Visits were to resume only if the examiner located by DSS approved the visits and set restrictions.

Dr. Robert Aiello ("Dr. Aiello") was the examiner retained by DSS to evaluate respondent. Upon completing his evaluation (which lasted from 17 May 1999 until 10 July 1999), it was determined that respondent met three of the four criteria for MSBP. Dr. Aiello suggested a four-step treatment program by which respondent could resolve the problems that might lead to child abuse through MSBP. The court adopted this program in an order filed 7 September 1999, which also ordered respondent (1) not to be unsupervised around children or provide any children with child care services, (2) not to have any pets in her temporary or permanent care, and (3) to assist DSS in identifying and securing an accurate support system to help provide a safe environment for Kayla. Dr. Aiello was also of the opinion that:

> . . . Respondent mother have no pets in [her] home so that there would be no concerns that the Respondent mother would transfer her behaviors associated with MSBP to animals; furthermore, Dr. Aiello was of the opinion that tattooing and piercing are forms of self marking and attention seeking behaviors and [if engaged in] are significant in showing that the Respondent mother continues her actions to draw attention to herself.

IN RE GREENE

[152 N.C. App. 410 (2002)]

Despite the court's order and Dr. Aiello's opinion, respondent continued to maintain a cat in her home and provide child-care services while unsupervised on several occasions during the fall of 1999. Respondent also got two tattoos, a tongue piercing, and checked herself into a hospital psychiatric unit claiming major depression and suicide ideations. Thus, the court relieved DSS from further efforts to reunify respondent with Kayla on 19 November 1999. DSS then instituted this action by filing a motion in the cause for termination of respondent's parental rights on 6 December 1999.

DSS' motion was heard by the court on 5 February 2001. DSS presented evidence regarding respondent's various violations of the court's previous order and her failure to continue or benefit from treatment for her disorder, as well as evidence that Kayla had adjusted well since being placed in foster care and had not experienced any medical problems since being in regular foster placement. Respondent presented no evidence at the hearing. Thus, the court concluded on 12 March 2001 that it would be in the best interests of Kayla to terminate respondent's parental rights because respondent:

2. [Had] . . . abused her minor child as defined by G.S. 7B-101(1) by creating a substantial risk of serious physical injury to the minor child by other than accidental means by fabricating medical problems with the minor child and subjecting the minor child to medical procedures, medications, and surgeries.

3. [Had] . . . wilfully left the minor child in foster care for more than twelve months without showing to the satisfaction of the Court that reasonable progress under the circumstances ha[d] been made within twelve months in correcting those conditions which led to the removal of the child.

4. . . . . [I]s incapable of providing for the proper care and supervision of the minor child such that the minor child is a dependent juvenile within the meaning of G.S. 7B-101 and there is a reasonable probability that such incapability will continue for the foreseeable future.

Respondent appeals.

Respondent presents nine assignments of error. She abandons her tenth assignment of error in her brief to this Court. After examining respondent's first, fifth, and eighth assignments of error, we conclude that these assigned errors are without merit and do not warrant further discussion in this opinion. Thus, respondent's remaining

assigned errors present this Court with three issues: (I) whether there was sufficient evidence to support termination of respondent's parental rights; (II) whether termination of respondent's parental rights was in the best interests of the child; and (III) whether the trial court committed reversible error by excluding from evidence certain information contained within the records maintained by DSS.

I.

[1] In an action to terminate parental rights, the petitioner has the burden of proving at the adjudication stage that there is clear, cogent, and convincing evidence to support at least one of the statutory grounds for termination provided in Section 7B-1111 of the North Carolina General Statutes. *In re McMillion*, 143 N.C. App. 402, 408, 546 S.E.2d 169, 173-74, *disc. review denied*, 354 N.C. 218, 554 S.E.2d 341 (2001). *See also* N.C. Gen. Stat. § 7B-1111 (2001). If the petitioner meets this burden and an order terminating parental rights is subsequently issued, the standard for appellate review of the trial court's decision is whether the court's findings of fact are supported by clear, cogent, and convincing evidence, and whether those findings support the court's conclusions of law. *McMillion*, 143 N.C. App. at 408, 546 S.E.2d at 174. If the termination is supported by such evidence, the trial court's findings are binding on appeal, even if there is evidence to the contrary. *In re Williamson*, 91 N.C. App. 668, 674, 373 S.E.2d 317, 320 (1988) (citation omitted).

In the case *sub judice*, the first issue is whether the trial court had clear, cogent, and convincing evidence of grounds to terminate respondent's parental rights. Specifically, respondent assigns error to the following ultimate findings of fact made by the court justifying the termination of her parental rights, which are set forth respectively as respondent's second, fourth, and third assignments of error:

3. That the minor child, Kayla Destiny Greene, has been abused by her mother, Dawn Marie Hook Greene, as defined by G.S. 7B-101(1) by the mother creating a substantial risk of serious physical injury to the minor child by other than accidental means by fabricating medical problems with the minor child, and subjecting the minor child to medical procedures, medications, and surgeries; further, the substantial risk of serious physical injury is most likely to continue because of the Respondent mother's lack of following through with any of her treatment plans; that this creates a strong likelihood that abuse would continue and has continued through the time of [the] hearing.

4. That the Respondent mother has willfully left the minor child in foster care for more that twelve months without showing to the satisfaction of the Court that reasonable progress under the circumstances has been made within twelve months in correcting those conditions which led to the removal of the minor child. That there is some evidence that the Respondent mother made progress in her individual therapy, but there is substantial evidence to show that this progress was only minimal and that none of the conditions were corrected which led to the removal of the minor child.

5. That based on the totality of the evidence received . . ., the [trial] Court finds that the Respondent mother did seek services for her problem of [MSBP] until December, 1999; at that time, the treatment was stopped by the Respondent mother who had not reached any of her goals or any of her objectives on any issue; that the Respondent mother sought no further treatment; that there is a great likelihood that mental health issues will continue such that the Respondent mother is incapable of providing for the proper care and supervision of her minor child, such that the minor child is a dependent juvenile as defined by N.C.G.S. 7B-101, and there is a reasonable probability that such incapability will continue for the foreseeable future.

These ultimate findings of fact provide three separate grounds for terminating respondent's parental rights: Finding of Fact 3 represents grounds based on abuse pursuant to Section 7B-1111(a)(1); Finding of Fact 4 represents grounds based on respondent's inability to provide for the child's proper care and supervision pursuant to Section 7B-1111(a)(6); and Finding of Fact 5 represents grounds based on respondent's willfully leaving the child in foster care pursuant to Section 7B-1111(a)(2). However, this Court has held that "[a] valid finding on one statutorily enumerated ground is sufficient to support an order terminating parental rights." *In re Stewart Children*, 82 N.C. App. 651, 655, 347 S.E.2d 495, 498 (1986) (citing *In re Pierce*, 67 N.C. App. 257, 312 S.E.2d 900 (1984)). Therefore, even though we find there is clear, cogent, and convincing evidence to support termination based on each of the statutory grounds provided by the trial court, we need only address one of respondent's assignments of error challenging the sufficiency of the evidence. *See id.*

In part, an "abused juvenile" is defined as "[a]ny juvenile less than 18 years of age whose parent . . . [c]reates or allows to be created a substantial risk of serious physical injury to the juvenile by other than

accidental means[.]" N.C. Gen. Stat. § 7B-101(1)(b) (2001). Section 7B-1111(a)(1) of our statutes allows a court to terminate parental rights upon a finding that the parent has abused his or her child in accordance with the definition. *See* § 7B-1111(a)(1). In reaching this conclusion, the trial court must admit and consider all evidence of relevant circumstances or events which existed or occurred before the adjudication of abuse, as well as any evidence of changed conditions in light of the evidence of prior abuse and the probability of a repetition of that abuse. *In re* Beck, 109 N.C. App. 539, 545, 428 S.E.2d 232, 236 (1993) (citing *In re Ballard*, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984)). " 'The determinative factors must be the best interests of the child and the fitness of the parent to care for the child *at the time of the termination proceeding. . . .*' " *Id.* (Emphasis in the original.)

Here, the record provides overwhelming evidence that respondent's intentional actions created a substantial risk of serious physical injury to her child. Evidence was offered that during the two years prior to Kayla being removed from respondent's home, respondent subjected the child to 25 different emergency room visits, 60 office visits to pediatricians, 143 prescriptions, and 8 admissions to the hospital. After the child was taken from her, respondent made no substantial improvements to correct the conditions that led to Kayla being removed from her care and custody despite reunification efforts by DSS. Respondent continuously failed to comply with a court order preventing her from providing child care services to other minor children while unsupervised and caring for animals in her home. Although respondent attended numerous therapy sessions and underwent treatment for MSBP, she continued to display the attention-seeking behaviors associated with this disorder by: (1) being inappropriately dressed without undergarments so as to show others her private parts; (2) being loud, boisterous, and threatening in public places; (3) calling "911" after receiving a superficial laceration on her forearm that was not even bleeding; (4) obtaining tattoos and a tongue piercing when these actions were prohibited by her treatment program; and (5) admitting herself to a psychiatric hospital for depression and suicidal tendencies. The evidence offered further showed that respondent stopped her therapy sessions and treatment after making only minimal progress, but before meeting any of her goals or objectives. Respondent offered little to no evidence to dispute these findings. Therefore, we cannot conclude that the trial court did not have sufficient evidence to terminate respondent's parental rights. Respondent's failure to make any substantial

change in the conditions that led to Kayla being taken from her care and custody signify a strong probability of a repetition of abusive behavior.

II.

[2] The second issue raised by respondent (as her sixth assignment of error) is whether the trial court erred in concluding at the disposition stage that it was in Kayla's best interests to terminate respondent's parental rights. Our statutes provide that even when the trial court finds one or more grounds exist authorizing the termination of those rights, the court shall not issue an order terminating parental rights if it would not be in the best interests of the child. *See* § 7B-1110(a). Respondent has failed to meet her burden of showing error.

The 119 findings of facts contained in the order terminating respondent's parental rights demonstrate that the trial court thoroughly considered what would be in the best interests of Kayla. Aside from making findings of fact regarding instances of prior abuse and the probability of its repetition, the court also made findings with respect to the child's progress since being removed from respondent's home. Some of these findings include:

103. That since being placed in foster care, over a three year period, the minor child went to a pediatrician on nine occasions; three of the occasions were for foster care wellness checks; two of the occasions were for followup visits for bronchitis and an ear problem that were cleared with antibiotics at the doctor's office; that the minor child, over a three year period, had no fevers, no complaints, no hospital or ER admissions, no surgeries, and no accidents or injuries which required medical attention.

104. That the minor child, when originally placed in foster care, did request doctor visits and medical care when she would scrape herself or have minor injuries; that the foster parent would redirect the minor child, attend to the injury, and avoid any unnecessary medical interaction.

. . . .

107. That the minor child did have initial problems when separated from her parents; that she has been in therapy for adjustment disorder and stress which has caused mixed emotional conflict.

. . . .

113. That during in-home therapy and following in-home therapy at supervised visitation, [the child's therapist] observed that the minor child had no problem disengaging from her mother after the visitation and going without incident back to foster care; that this was unusual for a child of her age.

. . . .

115. That since June, 2000, Michelle Coggins, Social Worker for the minor child, has made regular visits with the minor child in her new foster home; that the child has bonded with her foster parents and gets along well with other children in the home; that the child is age appropriate in her development and interaction with other children.

. . . .

116. That since being in her regular foster placement, the minor child has missed only one day of school and has had no medical problems.

Based on the foregoing findings, coupled with the evidence discussed previously in this opinion establishing prior abuse and the probability of its repetition, we cannot find that the trial court erred in concluding that it was in the child's best interest to terminate respondent's parental rights.

### III.

[3] The final issue presented to this Court (as respondent's seventh assignment of error) is whether the trial court erred in excluding from evidence certain documentation contained within the records maintained by DSS. We find no error.

Section 7B-2901(b) of our statutes provides that:

The Director of the Department of Social Services shall maintain a record of the cases of juveniles under protective custody by the Department or under placement by the court, which shall include family background information . . . . The records maintained pursuant to this subsection may be examined only by order of the court except that the guardian ad litem, or juvenile, shall have the right to examine them.

§ 7B-2901(b). If a party other than the guardian ad litem or the juvenile contends that the records are relevant to an action and moves to discover those records:

A judge is required to order an *in camera* inspection and make findings of fact concerning the evidence at issue only if there is a possibility that such evidence might be material . . . and favorable to [that party]. However, if after the judge examines the evidence he rules against the [party's] discovery motion, the judge should order the records sealed for appellate review.

*State v. Phillips*, 328 N.C. 1, 18, 399 S.E.2d 293, 301 (1991) (citation omitted).

In the present case, respondent requested the trial court grant her access to certain documentation in DSS' records. After hearing arguments from both parties, the court did an *in camera* inspection of every page of the records. Once the court completed its review, it turned over only those documents that were deemed relevant and material, sealing the remainder for appellate review. We have reviewed these sealed documents and find that many of them simply reiterate the findings of fact made by the court based on other evidence or testimony provided during the hearing. Any new information noted in the documents does not negate the multitude of findings supporting termination of respondent's parental rights or cause this Court to question the trial court's decision that termination was in the child's best interests. Thus, we conclude that the documents excluded by the court shed no light on respondent's ability to care for and retain her parental rights with respect to the minor child.

Accordingly, for the aforementioned reasons, we conclude that there was clear, cogent, and convincing evidence of grounds for the trial court's termination of respondent's parental rights to Kayla and that it was in the minor child's best interests to do so. Moreover, the trial court did not commit reversible error by excluding certain documentation from evidence that respondent's counsel deemed relevant to the case.

Affirmed.

Judges WYNN and HUDSON concur.