In re: CLARK, a minor juvenile

No. COA02-1335

(Filed 15 July 2003)

**1. Termination of Parental Rights— jurisdiction—DSS failure to file affidavit contemporaneous with juvenile petition**

The trial court did not err in a termination of parental rights case by concluding that it had jurisdiction even though the Department of Social Services (DSS) failed to file an affidavit

under N.C.G.S. § 50A-209 contemporaneously with the juvenile petition, because: (1) although it remains the better practice to require compliance with N.C.G.S. § 50A-209, failure to file this affidavit does not, by itself, divest the trial court of jurisdiction; (2) after the failure to comply with the statute was pointed out, the trial court gave DSS five days to comply and DSS complied by filing the affidavit within five days; and (3) respondent was not prejudiced when DSS was allowed five days to file the affidavit since the trial court was able to determine whether jurisdiction existed prior to rendering its decision.

**2. Trials— inadequate recording of proceedings**

Respondent mother in a termination of parental rights case was not prejudiced by the failure to record the entire proceeding over six different dates, because: (1) respondent made no attempt to use N.C. R. App. P. 9(c)(1) to provide a narration of the evidence in order to reflect the true sense of the evidence received to the extent the record does not do so; (2) although respondent has generally asserted prejudice, she points to nothing specific in the record to support her argument; (3) the record and transcript do not disclose the exact amount of testimony lost or the amount of time during which the recording equipment malfunctioned, although it appears that very little of the testimony was not recorded and the interruptions were only very brief; and (4) the trial court's extensive findings indicate a careful evaluation of all the evidence.

**3. Termination of Parental Rights— willfully leaving child in foster care for more than twelve months**

The trial court did not abuse its discretion in a termination of parental rights case by finding under N.C.G.S. § 7B-1111(a)(2) that respondent mother willfully left her child in foster care for more than twelve months without showing to the trial court reasonable progress under the circumstances, because: (1) respondent repeatedly failed to comply with the Department of Social Service's service agreements, failed to appear at the permanency planning meetings, and often missed visitations with her child; and (2) although respondent found stable housing, the interior of the home as well as the front yard area was littered with alcoholic beverage containers and there was at least one incident of underage drinking.

**IN RE CLARK**

[159 N.C. App. 75 (2003)]

Appeal by respondent mother from order filed 7 February 2002 by Judge Charles M. Neaves, Jr. in Stokes County District Court. Heard in the Court of Appeals 12 June 2003.

*J. Tyrone Browder for petitioner-appellee.*

*Susan J. Hall for respondent-appellant.*

BRYANT, Judge.

Corena Lynn Clark (respondent) appeals from an order filed 7 February 2002 terminating her parental rights over Kayla Leeann Clark (the juvenile). On 6 September 2000, the juvenile was adjudicated as neglected and dependent after she was injured when respondent dropped her on the ground during a physical confrontation involving the juvenile's father and others on 30 August 1998.[1] At the time, respondent and the juvenile's father were living in someone else's home, and the altercation occurred after respondent had been kicked out of the house. Following this incident, the juvenile was removed from the home that day, placed in the custody of the Stokes County Department of Social Services (DSS), and placed in a foster home. As part of the neglect disposition order filed on 6 September 2000, defendant was required to establish a stable residence.

Termination proceedings were instituted on 22 November 2000. The termination of parental rights (TPR) hearing took place over six different dates: 22 August 2001; 16 October 2001; 28 November 2001; 18 December 2001; 17 January 2002; and 18 January 2002. The transcript of these proceedings was transcribed from an open-microphone recording, and on four occasions a tape ended either in the middle of testimony or counsel's statements. Further, during the cross-examination of respondent, the recording device and the trial court's microphone malfunctioned. Thus, it appears portions of the hearing have not been preserved for appellate review, although there is little indication of the amount of lost testimony or what the content of that testimony might have been.

Prior to the presentation of evidence, respondent moved to dismiss the petition based on lack of jurisdiction, due to the fact that

---

1. The order adjudicating juvenile as neglected is dated 28 September 1998, however, it was not signed until 31 August 2000 and not filed until 6 September 2000. Although not applicable to this case, we note section 7B-807 was amended to add subsection (b), effective 1 January 2002, and now requires the adjudicatory order to be reduced to writing, signed, and filed within 30 days following the completion of the hearing. *See* N.C.G.S. § 7B-807(b) (2001).

DSS had failed to file an affidavit as to the status of the child under section 50A-209 of the General Statutes. The trial court denied the motion and ordered DSS to file the affidavit within five days.

The evidence presented at the hearing and preserved in the transcript tends to show that between August 1998 and 2000, respondent had moved from residence to residence approximately five times. During that time, respondent failed to maintain stable employment. Respondent also failed to comply with DSS service agreements and did not appear for any of the five permanency planning meetings held by DSS. In addition, respondent missed numerous visitations with the juvenile.[2] At the time of the TPR hearing, respondent was living with her new husband and her two children by that marriage. A maternal outreach program worker testified that she had visited respondent at her current residence between thirty to forty times to help respondent with financial and transportation problems. On these visits, the worker observed beer and liquor bottles overflowing from trash cans at the residence and beer and liquor bottles scattered around the front yard of the house. She also observed a number of people other than respondent or respondent's family living in the house, including a fifteen-year-old boy, whom she witnessed consuming an alcoholic beverage. Further, the worker expressed concern over the lack of supervision of respondent's youngest child.

The trial court, *inter alia*, found:

84. [Respondent], willfully, and not due solely to poverty, left [the juvenile] in foster care or placement outside the home for more than twelve months without showing to the satisfaction of the [trial court] that reasonable progress under the circumstances has been made within twelve months in correcting those conditions which led to the removal of the juvenile . . . .

From this finding the trial court concluded that grounds existed to terminate respondent's parental rights over the juvenile, and subsequently ordered those parental rights terminated.[3]

---

2. Respondent states in her brief to this Court that she missed twenty-three of seventy-two visitations.

3. The trial court in the case *sub judice* concluded there were three separate grounds upon which to base a termination of parental rights. Where, however, an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds. *See In re Greene*, 152 N.C. App. 410, 416, 568 S.E.2d 634, 638 (2002).

**IN RE CLARK**

[159 N.C. App. 75 (2003)]

The issues are whether: (I) failure by DSS to file an affidavit pursuant to N.C. Gen. Stat. § 50A-209 contemporaneously with the juvenile petition deprived the trial court of jurisdiction; (II) respondent was prejudiced by the failure to record the entire proceeding; and (III) there is sufficient evidence to support the trial court's finding that respondent willfully left the juvenile in foster care for more than twelve months, without showing to the trial court reasonable progress under the circumstances.

I

**[1]** Defendant first contends that failure by DSS to file an affidavit pursuant to section 50A-209 of the North Carolina General Statutes at the time of the filing of the juvenile petition deprived the trial court of jurisdiction to adjudicate this matter and further, that the trial court's failure to stay the proceedings until the affidavit was filed constituted error. We disagree.

N.C. Gen. Stat. § 50A-209 requires that a party filing a petition in cases involving child custody, including termination of parental rights actions, shall, under oath, either in the first pleading or in an attached affidavit, give information "if reasonably ascertainable, . . . as to the child's present address or whereabouts, the places where the child has lived during the last five years, and the names and present addresses of the persons with whom the child has lived during that period." N.C.G.S. § 50-209(a) (2001). The purpose of this affidavit is to assist the trial court in determining whether it can assume subject matter jurisdiction over the matter. *See Brewington v. Serrato*, 77 N.C. App. 726, 730, 336 S.E.2d 444, 447 (1985) (purpose of former section 50A-9 was to enable trial court to determine if jurisdiction existed in child custody matters). Although it remains the better practice to require compliance with section 50A-209, failure to file this affidavit does not, by itself, divest the trial court of jurisdiction. *See Pheasant v. McKibben*, 100 N.C. App. 379, 382, 396 S.E.2d 333, 335 (1990) (failure to comply with former section 50A-9 did not defeat subject matter jurisdiction where the trial court properly exercised jurisdiction).

In this case, after the failure to comply with the statute was pointed out, the trial court gave DSS five days to comply, and DSS complied by filing the affidavit within five days. Respondent does not argue that the contents of this affidavit do not support a finding that the trial court had jurisdiction over the juvenile. Accordingly, we reject the argument that failure to comply with section 50A-209

divested the trial court of jurisdiction. Furthermore, the trial court was not required to stay the proceedings because allowing DSS five days to file the affidavit was not prejudicial to respondent, as the trial court was able to determine whether jurisdiction existed prior to rendering its decision.

II

**[2]** Respondent next argues that an inadequate recording of the proceedings and the continuation of the hearing over six different court sessions constitutes prejudicial error in that it deprives her of meaningful appellate review.

N.C. Gen. Stat. § 7B-806 requires that all juvenile "adjudicatory and dispositional hearings shall be recorded by stenographic notes or by electronic or mechanical means." N.C.G.S. § 7B-806 (2001). Mere failure to comply with this statute standing alone is, however, not by itself grounds for a new hearing. *See Miller v. Miller*, 92 N.C. App. 351, 354, 374 S.E.2d 467, 469 (1988) (appeal dismissed where party alleged failure to record proceedings under former section 7A-198, now section 7B-806, but failed to assert prejudice and had not attempted to reconstruct the proceedings through a narration of the evidence). A party, in order to prevail on an assignment of error under section 7B-806, must also demonstrate that the failure to record the evidence resulted in prejudice to that party. *See id.; see also In re Wright*, 64 N.C. App. 135, 137-38, 306 S.E.2d 825, 827 (1983) (argument rejected where there was no showing of prejudice and no allegation of what transcript would have contained).

Furthermore, the use of general allegations is insufficient to show reversible error resulting from the loss of specific portions of testimony caused by gaps in recording. *See In re Peirce*, 53 N.C. App. 373, 382, 281 S.E.2d 198, 204 (1981) (no prejudice shown where party failed to allege or show in the record the contents of the lost testimony). Where a verbatim transcript of the proceedings is unavailable, there are "means . . . available for [a party] to compile a narration of the evidence, i.e., reconstructing the testimony with the assistance of those persons present at the hearing." *Miller*, 92 N.C. App. at 354, 374 S.E.2d at 469. If an opposing party contended "the record on appeal was inaccurate in any respect, the matter could be resolved by the trial judge in settling the record on appeal." *Id.; see also* N.C.R. App. P. 9(c)(1) (providing for narration of the evidence in record on appeal and, if necessary, settlement of the record by the trial court on form of narration of the testimony).

**IN RE CLARK**

[159 N.C. App. 75 (2003)]

"Although, . . . there is a long-standing rule . . . that there is a presumption in favor of the regularity and correctness in proceedings in the trial court, where the appellant presents evidence to rebut such a presumption, this Court will not turn a deaf ear to that evidence." *Coppley v. Coppley*, 128 N.C. App. 658, 663, 496 S.E.2d 611, 616 (1998) (internal quotations omitted) (citation omitted). While it is the appellant's responsibility to make sure the record on appeal is complete:

> where the appellant has done all that she can to do so, but those efforts fail because of some error on the part of our trial courts, it would be inequitable to simply conclude that the mere absence of the recordings indicates the failure of appellant to fulfill that responsibility.

*Id.* (stating it was error for trial court to fail to record proceedings, but concluding defendant failed to show prejudice).

In this case, portions of the testimony and the hearing are not available because tapes were changed in the middle of testimony as well as the malfunctioning of recording equipment and the trial court's microphone. Evidence was lost briefly during the changing of tapes on four occasions. The first of these instances was during the cross-examination of Hugh Mann, a certified substance abuse counselor and therapist, who testified about his therapy sessions with respondent and having referred her for psychiatric and psychological evaluations as well as vocational rehabilitation. He also testified to respondent's substance abuse. Mann further testified that respondent did not return for therapy after two visits and he had not heard from her since 6 April 1999. On cross-examination, respondent asked Mann:

Q. Do you know whether or not [respondent] moved out of Stokes County during—sometime after April—

(Tape ends mid sentence and begins mid sentence)

A. —hearsay.

Q. And you know that she was living in—she lived in Thomasville for [awhile]?

A. I didn't know Thomasville. I had heard that she had gone to West Virginia for [awhile].

The remaining three instances took place during the recall testimony of Marsha Marshall, a social worker with DSS. Marshall testi-

fied about the altercation leading to the removal of the juvenile, the initial neglect adjudication, and respondent's failure to make reasonable progress to regain custody of the juvenile following the neglect proceeding. On direct examination, Marshall testified about notes taken from visitations between respondent and the juvenile:

A. (continuing) She noted on this date that [respondent] did not know how to set limits or discipline [the juvenile]. On August—(Tape ends mid sentence and begins mid sentence)—[respondent] sent clothes too small for [the juvenile].

On cross-examination Marshall was asked:

Q. So there were actually seventeen [visits]—I mean fifteen of them that were missed but—(Tape ends mid sentence and begins mid sentence)—the reason for it?

A. Yes.

Q. Now what reasons were given for the fifteen that were missed?

A. Do you want dates and reasons or just the various reasons given?

Later on cross-examination of Marshall, the tape was changed during a dialogue between the trial court and respondent's counsel, during which documents were handed up to the trial court but no testimony appears to have been lost. Thus, from our thorough review of the six volume transcript, covering over 600 pages of testimony, it appears the interruption in testimony due to changing of tapes was very brief.

The incident of most concern is the malfunctioning of the recording equipment and the trial court's microphone that occurred during the cross-examination of respondent. Her cross-examination testimony appears to end abruptly with the malfunctioning of the equipment, and the transcript does not continue until the next witness is called. There is nothing in the transcript, or elsewhere in the record on appeal, however, that divulges how much testimony was lost or the amount of time the equipment was malfunctioning.[4]

---

4. There are also instances where the transcript indicates that parts of statements are "inaudible." There is no indication, however, that this is a result of the recording equipment malfunctioning.

Notwithstanding, respondent has made no attempt to use Rule 9(c)(1) of the rules of appellate procedure to provide a narration of the evidence in order to "reflect the true sense of the evidence received" to the extent the record does not do so. N.C.R. App. P. 9(c)(1). Furthermore, although respondent has generally asserted that the failure to record all of the testimony over the six different dates was prejudicial, she points to nothing specific in the record to support her argument. *See Peirce*, 53 N.C. App. at 382, 281 S.E.2d at 204. In addition, the record and transcript do not disclose the exact amount of testimony lost or the amount of time during which the recording equipment malfunctioned, although it appears that very little of the testimony was not recorded, and the interruptions were only very brief. Moreover, the trial court's extensive findings indicate a careful evaluation of all of the evidence.[5] Our review of the record, without the benefit of a narration of the missing evidence, fails to show any prejudice to respondent from the missing testimony. Thus, we reject respondent's argument on this assignment of error.

III

**[3]** Respondent finally contends that the trial court abused its discretion by concluding grounds existed to terminate respondent's parental rights over the juvenile. An order terminating parental rights will be upheld if there is clear, cogent, and convincing evidence to support the findings of fact and those findings of fact support the trial court's conclusions of law. *In re Oghenekevebe*, 123 N.C. App. 434, 439, 473 S.E.2d 393, 398 (1996).

In the case *sub judice*, the trial court concluded grounds existed to terminate respondent's parental rights under section 7B-1111(a)(2). Section 7B-1111(a)(2) provides that parental rights may be terminated upon a finding that "the parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C.G.S. § 7B-1111(a)(2) (2001). Willfulness under this section is less than willful abandonment, and does not require a finding of fault.

---

5. Although respondent does assign error to the trial court's ultimate findings of fact on the grounds supporting termination of parental rights, she does not assign error to the extensive evidentiary findings. To the extent those findings have not been assigned error they are deemed supported by sufficient evidence and are treated as conclusive on appeal. *See In re Caldwell*, 75 N.C. App. 299, 301, 330 S.E.2d 513, 515 (1985).

*Oghenekevebe*, 123 N.C. App. at 439, 473 S.E.2d at 398. Willfulness may be found where even though a parent has made some attempt to regain custody of the child, the parent has failed to show "reasonable progress or a positive response to the diligent efforts of DSS." *Id.* at 440, 473 S.E.2d at 398.

In this case, it is undisputed that the juvenile was left in foster care or placement outside the home for more than twelve months. Respondent contends only that the juvenile was not willfully left in foster care. The record shows that DSS made diligent efforts through implementation of service agreements and holding permanency planning meetings to assist respondent in reuniting with her child. Respondent, however, repeatedly failed to comply with the service agreements, failed to appear at the permanency planning meetings, and often missed visitations with her child. Further, although respondent had apparently finally obtained stable housing, the interior of the home as well as the front yard area was observed to have been littered with alcoholic beverage containers and there was at least one incident of underage drinking. This constitutes clear, cogent, and convincing evidence that respondent has failed to show reasonable progress or a positive response to the diligent efforts of DSS. *See id.* at 440, 473 S.E.2d at 398 (finding of willfulness not precluded just because parent has made some efforts to regain custody). Thus, there is sufficient evidence upon which to base a finding that respondent willfully left the juvenile in foster care or placement outside the home, and this finding in turn supports the trial court's conclusion that grounds existed to terminate respondent's parental rights. As previously indicated, where we determine the trial court properly concluded that one ground exists to support the termination of parental rights, we need not address the remaining grounds. *See Greene*, 152 N.C. App. at 416, 568 S.E.2d at 638. Accordingly, the trial court did not err in terminating respondent's parental rights.

Affirmed.

Judges McGEE and GEER concur.