LEVINSON, Judge.
Respondents (mother and father) appeal from an order terminating their parental rights in the minor child "Megan."[1] We affirm.
Uncontradicted record evidence establishes the following: Megan was born in Johnston County, North Carolina, on 24 March 2001, to respondents. On 8 June 2001 a social worker employed by the Johnston County Department of Social Services (DSS) observed Megan to have a black eye, facial bruising, and other unexplained bruises. The same day, Megan was removed from her parents' home and placed in DSS custody. Medical examinations revealed that the ten week old baby also had fractures of both her right and leftfemurs, a fractured wrist bone, and healed rib fractures. DSS later filed a petition alleging that she was abused, neglected, and dependent. At the adjudication hearing, expert medical witnesses testified that Megan's injuries were not caused by accidental means, and were consistent with child abuse. A social worker from the Lenoir County DSS testified that DSS was involved with two of the mother's other three children, and that the mother had left Lenoir County without completing the family services case plan or resolving the issues that led to the removal of the two children from her custody.
On 19 December 2001 Megan was adjudicated neglected, abused, and dependent. In this adjudication order, the trial court found that the parents denied any responsibility for Megan's injuries, had not sought medical treatment for the child, and that, although they blamed Megan's babysitter for the abuse, the parents had continued to send her to this babysitter. The trial court's order stated in relevant part that Megan was abused "in that the child received serious physical injury by other than accidental means for which the parents could not explain and further that the parents created or allowed to be created a substantial risk of serious physical injury to the juvenile by other than accidental means by allowing the child to return to the babysitter's home to whom they claim injured the child." On disposition of the 19 December 2001 adjudication, the trial court ordered that Megan's custody remain with DSS, that DSS be relieved of further efforts at reunification, and that visitation be stopped. At a November 2002 permanencyplanning hearing, the permanent plan for Megan was changed from placement with a relative to adoption. On 6 January 2003 DSS filed a petition for termination of the parental rights of both mother and father in Megan. In an order entered 1 December 2003 the trial court terminated the parents' parental rights in Megan. The court's order found the existence of grounds for termination of parental rights:
[1] in that the juvenile has been abused and neglected by [both parents] pursuant to N.C.G.S. § 7B-1111(1) and that there is a probability of abuse and/or neglect if the child was returned to either parent's care; [2] that the mother and father have willfully left the juvenile in foster care . . . more than twelve months without . . . [making] reasonable progress [on]. . . the issues which led to the juvenile's removal . . .; and that [3] [father] has not provide[d] a substantial portion of the cost of care for the juvenile . . . although physically and financially able to do so[.] . . .
The trial court further concluded that:
it is in the child's best interest that the parental rights of the parents be terminated as the juvenile is in need of stability in a safe, protective and nurturing environment, with proper care and supervision. The juvenile has been in foster care for all but three months of her life and has not had any contact with either parent since December of 2001. The child is developmentally on target. The parents have failed to adequately address the issues, which led to the juvenile's injuries and removal. It . . . is further found by this court, that it is not safe to return this child to the parents' home as there are continuing protection and safety issues for the child. The court finds that no evidence was presented that it was contrary to the child's best interests that the [parents'] parental rights be terminated.
Pursuant to these and other findings and conclusions, the court issued an order terminating the parental rights of mother and father in Megan. From this order, respondents appeal.
Standard of Review
"Termination of parental rights involves a two-stage process. At the adjudicatory stage, `the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111 exists.' `If the trial court determines that grounds for termination exist, it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child.' `[This Court] review[s] the trial court's decision to terminate parental rights for abuse of discretion.'" In re J.A.O., ___ N.C. App. ___, ___, 601 S.E.2d 226, 228 (2004) (quoting In re Blackburn, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001), and In re Anderson, 151 N.C. App. 94, 97-98, 564 S.E.2d 599, 602 (2002)). "On appeal, `[o]ur standard of review for the termination of parental rights is whether the court's `findings of fact are based upon clear, cogent and convincing evidence' and whether the `findings support the conclusions of law.'" In re Baker, 158 N.C. App. 491, 493, 581 S.E.2d 144, 146 (2003) (quoting In re Huff, 140 N.C. App. 288, 292, 536 S.E.2d 838, 840 (2000)).
Certain issues are raised by both mother and father, and may be reviewed together. We first consider respondents' arguments that the trial court erred by finding as a ground for termination of parental rights that the respondents had abused Megan and that there was a probability of future abuse if she were returned to their care.
N.C.G.S. § 7B-1111(a)(1) (2003) allows the court to terminate parental rights upon finding that a parent has abused the child, and further provides that a juvenile "shall be deemed to be abused . . . if the court finds the juvenile to be an abused juvenile within the meaning of G.S. 7B-101[.]" N.C.G.S. § 7B-101(1)(b) (2003), defines an "abused juvenile" to include a "juvenile less than 18 years of age whose parent . . . [c]reates or allows to be created a substantial risk of serious physical injury to the juvenile by other than accidental means[.]" Respondents herein challenge the court's finding of abuse as a ground for termination of parental rights. However, respondents "assign error to the trial court's ultimate findings of fact on the grounds supporting termination of parental rights, [but do] not assign error to the extensive evidentiary findings. To the extent those findings have not been assigned error they are deemed supported by sufficient evidence and are treated as conclusive on appeal." In re Clark, 159 N.C. App. 75, 83, 582 S.E.2d 657, 662 (2003) (citation omitted). Accordingly, we need only assess whether the court's findings support its conclusions.
A prior adjudication of abuse may be admitted and considered in a proceeding for termination of parental rights. See In re Ballard, 311 N.C. 708, 714, 319 S.E.2d 227, 232 (1984). Ballard involved an adjudication for neglect; however "the law andreasoning of Ballard apply equally when parental rights are terminated pursuant to a finding of abuse." In re Alleghany County, 75 N.C. App. 467, 470, 331 S.E.2d 256, 258 (1985). When prior adjudication orders are admitted, the parties are "estopped from relitigating the abuse and neglect issues decided in the previous proceeding." In re Wheeler, 87 N.C. App. 189, 195, 360 S.E.2d 458, 461 (1987). However, termination may not be based solely upon a prior adjudication. Ballard, 311 N.C. at 714, 319 S.E.2d at 232. Accordingly, in a termination of parental rights proceeding, the trial court "must admit and consider all evidence of relevant circumstances or events which existed or occurred before the adjudication of abuse, as well as any evidence of changed conditions in light of the evidence of prior abuse and the probability of a repetition of that abuse." In re Greene, 152, N.C. App. 410, 417, 568 S.E.2d 634, 638 (2002) (citing In re Beck, 109 N.C. App. 539, 545, 428 S.E.2d 232, 236 (1993)).
In the instant case, Megan was previously adjudicated abused in an order stating that she "received serious physical injury by other than accidental means for which the parents could not explain" and that respondents "created or allowed to be created a substantial risk of serious physical injury to the juvenile . . . by allowing the child to return to the babysitter's home to whom they claim injured the child." In its order terminating respondents' parental rights, the trial court incorporated the prior adjudication order. So, "we may not reexamine whether [the parents] created or allowed to be created a substantial risk ofphysical injury to [Megan] by leaving her with [the babysitter that the parents blamed for her injuries], [although] we are bound to review the findings relating to conduct both before and after that date." In re Alleghany, 75 N.C. App. at 470, 331 S.E.2d at 258.
We conclude the trial court's finding of abuse as a ground for termination of parental rights is supported by its findings of fact, including the following:
6. . . . [O]n or about June 8, 2001, . . . [DSS found that] the child had a black eye and a bruise on the right side of her face; that the child had a right side facial bruise extending from her forehead to her chin, . . . [and] circular bruising on her left cheek[.] . . . [T]he bruising was in various stages of healing. . . . The minor child was placed in the custody of the Johnston County [DSS] on or about June 8, 2001[.] . . .
7. The parents denied at the time of removal and continue to deny any knowledge as to what caused the child's injuries and further continue to allege that the injuries occurred while the child was in her babysitter's home; that although the mother and father had observed the bruising on the child's face, neither parent sought any medical treatment for the child in order to avoid involvement by the Johnston County [DSS]. . . . . Despite the parents' belief that the injuries occurred while in the care of the child's babysitter, they continued to allow her to provide care for their child. . . . The court finds that at the time of the child's injuries and the time of this hearing, the parents were protecting themselves and their self-interests over that of the child's.
8. . . . [X]rays . . . revealed metaphyseal fractures of the right and left femurs and a fracture of the distal left radius, and further revealed a rib fracture which had since healed[.] . . .
. . . .
13. The mother has given birth to five children, none of which are currently in her custody. . . . The mother's second and third children were removed by the Lenoir County [DSS]. . . .
. . . .
15. . . . The court further finds that the mother has never addressed any of the issues that the Lenoir County [DSS] had requested with regards to the removal of her second and third children. . . . [T]he parents [have] given birth to another child, however the parents tried to hide the child from the Johnston County [DSS] . . . which is the same action that they had taken at the time of [Megan's] injuries[.] . . .
16. The child was previously adjudicated as abused pursuant to N.C.G.S. § 7B-101 on or about December 19, 2001. The court finds that there is a likelihood of repetition of abuse of the child [if] returned to the parents custody as the parents continue to deny any culpability in the child's injuries and further continue to express that they lacked an alternative to returning the child to the individual they believe physically hurt their child[.]
. . . .
19. The mother completed a psychological evaluation in September of 2001 . . . [and] was prescribed medication for depression, however [she] did not like the side effects and stopped taking the medication[.] . . . The father . . . tries very hard to conform to the expectations of others[.] . . . The mother provides transportation for the father . . . and [is] his primary conduit of communication as she interprets for him in day to day activities. . . .
20. The mother was given another psychological evaluation[, and]. . . was diagnosed with . . . [d]epression[,] . . . [and] personality disorder with some avoidant, schizoid, paranoid, and masochistic features[.] . . . Impulsiveness, anger and hostility are symptoms of the mother's depression and anxiety, which are demonstrated in outbursts. . . .
. . . .
23. The court finds that . . . [a]ll actions of the parents are directed towards meeting their personal needs . . . and further are protecting themselves and their self-interests over those of the child. .. . The parents have further failed to demonstrate a maturity or initiative to protect any child in their care, particularly this child. . . . The mother, who lives in the same home as the father, is in need of additional long term services and medication, without which, there would be a recurrence of the same issues which led to the removal of the juvenile. The court finds that the changed conditions, taken in light of the parents' history of abuse and neglect, does not deflect the high probability of future abuse and neglect if the juvenile was returned to the parents' care.
"In cases of this sort, the decision of the trial court must of necessity be predictive in nature, as the trial court must assess whether there is a substantial risk of future abuse or neglect of a child based on the historical facts of the case." In re McLean, 135 N.C. App. 387, 396, 521 S.E.2d 121, 127 (1999). In the present case, we conclude that the court's findings amply support the trial court's conclusion that grounds existed for termination of parental rights in that respondents had abused Megan and there was a probability of future abuse if she were returned to her parents. We also note that the trial court found the existence of three separate grounds for termination of parental rights. "Where, however, an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds." In re Clark, 159 N.C. App. at 78, 582 S.E.2d at 659 (citing In re Greene, 152 N.C. App. at 416, 568 S.E.2d at 638). Accordingly, we conclude that the trial court did not err in its adjudication that grounds existed for termination of parental rights. This assignment of error is overruled.
Both parents also challenge the trial court's conclusion on disposition that it was in Megan's best interests that respondents' parental rights be terminated. We disagree.
"[T]he trial court has discretion, if it finds that at least one of the statutory grounds exists, to terminate parental rights upon a finding that it would be in the child's best interests." In re McMillon, 143 N.C. App. 402, 408, 546 S.E.2d 169, 174 (2001) (citation omitted). "On appeal, the trial court's decision to terminate parental rights is reviewed on an abuse of discretion standard[.]" In re J.L.K., ___ N.C. App. ___, ___, 598 S.E.2d 387, 391 (2004) (citing In re Nesbitt, 147 N.C. App. 349, 352, 555 S.E.2d 659, 662 (2001)). "Abuse of discretion exists when `the challenged actions are manifestly unsupported by reason.'" Barnes v. Wells, ___ N.C. App. ___, ___, 599 S.E.2d 585, 589 (2004) (quoting Blankenship v. Town & Country Ford, Inc., 155 N.C. App. 161, 165, 574 S.E.2d 132, 134 (2002), disc. review denied and appeal dismissed, 357 N.C. 61, 579 S.E.2d 384 (2003)).
In the instant case, we disagree that the trial court abused its discretion by concluding that it was in Megan's best interests that respondents' parental rights be terminated. We conclude that the trial court did not err in terminating the parental rights of both parents in Megan. The court's order is
Affirmed.
Judges HUNTER and CALABRIA concur.
Report per Rule 30(e).

To preserve her privacy, we will refer to the minor child by the pseudonym "Megan."