IN THE MATTER OF: N.A.L. AND A.E.L., JR., MINOR CHILDREN

No. COA08-510

(Filed 7 October 2008)

1. **Termination of Parental Rights— guardian ad litem for mother—mental health issues—inquiry required**

    The trial court abused its discretion in a termination of parental rights proceeding by not conducting an inquiry as to whether a guardian ad litem should have been appointed for the mother, given the allegations made by DSS and the diagnosis of a personality disorder and borderline intellectual functioning.

2. **Termination of Parental Rights— leaving children in foster care—insufficient progress willful**

    The trial court did not err by terminating a father's parental rights on the ground that he had willfully left the children in foster care for more than 12 months where he had made some

IN RE N.A.L. & A.E.L., JR.

[193 N.C. App. 114 (2008)]

progress, but had not demonstrated that he was able to care for one child without significant care from others, much less two children, one of whom required special medical care. Willfulness under N.C.G.S. § 7B-1111(a)(2) is less than willful abandonment.

**3. Termination of Parental Rights— best interests of children—no abuse of discretion**

The trial court did not err in a termination of parental rights proceeding by determining that it was in the best interest of the children to terminate respondent-father's parental rights.

**4. Termination of Parental Rights— reunification efforts ceased—appeal—no citation of legal authority**

An assignment of error in a termination of parental rights proceeding concerning the cessation of reunification efforts was dismissed where no legal authority was cited in support of the argument.

Appeal by respondents from orders entered 20 February 2008 and 27 February 2008 by Judge Robert M. Brady in Caldwell County District Court. Heard in the Court of Appeals 27 August 2008.

*Lauren Vaughan for petitioner-appellee Caldwell County Department of Social Services.*

*Pamela Newell Williams for Guardian ad litem.*

*Charlotte Gail Blake for respondent-father.*

*Judy N. Rudolph for respondent-mother.*

BRYANT, Judge.

L.W.L.[1] (respondent-mother) and A.E.L., Sr. (respondent-father) appeal from an order entered 20 February 2008 terminating their parental rights to N.A.L., and an order entered 27 February 2008 terminating their parental rights to A.E.L., Jr. Respondent-father also appeals from an order entered 30 July 2007 ceasing reunification efforts with A.E.L., Jr. We affirm in part and reverse and remand in part.

The Caldwell County Department of Social Services (DSS) became involved with respondents' family in April of 2004 when N.A.L.

---

1. Initials have been used throughout this opinion to protect the identity of the juveniles.

IN RE N.A.L. & A.E.L., JR.

[193 N.C. App. 114 (2008)]

was admitted to Caldwell Memorial Hospital due to severe coughing and wheezing. Hospital staff observed respondent-mother's interaction with N.A.L. and were concerned when respondent-mother repeatedly yelled and shouted profanity towards N.A.L., who was only five months old at the time. N.A.L. was admitted to the hospital again in November 2004 and February 2005. On both occasions, hospital staff observed respondent-mother yelling and shouting obscenities towards N.A.L. On 10 February 2005, petitions were filed alleging N.A.L. and A.E.L., Jr. were neglected and dependent juveniles. At the time the petitions were filed, respondent-mother left the home upon DSS' recommendation.

On 30 March 2005, respondent-father obtained a psychological evaluation which indicated he had a Full Scale IQ of 62. The evaluator concluded that respondent-father could not function over time as an adequate parent because of his limited intellect along with a potential for violence and loss of emotional control. The children were adjudicated neglected and dependent on 21 June 2005 based on respondent-mother's interaction with N.A.L. At the dispositional hearing, custody of the children remained with DSS. Respondent-mother was ordered to complete a psychological evaluation and follow any recommendations. Respondent-father was ordered to complete a sex offender specific evaluation because of allegations made by A.E.L., Jr. and to follow all recommendations. Both respondents were ordered to submit to random drug screens, regularly attend counseling and follow all recommendations, and make regular child support payments.

A review order was entered on 20 February 2006 ceasing reunification efforts with respondent-mother but continuing efforts with respondent-father. In a review order entered 17 May 2006, the court ordered respondent-father to obtain suitable housing and for respondent-mother not to reside with respondent-father. A review order entered 30 May 2006, specifically admonished respondent-father that respondent-mother was to have no contact with the children and that any such attempt would "compromise the continuing efforts of reunification with [respondent-father]." The trial court also noted that N.A.L.'s significant medical issues required the children to be placed in separate homes.

In August of 2006, the trial court approved a trial home placement for A.E.L. with respondent-father and continued N.A.L.'s unsupervised visits with respondent-father. Again, the court specifically ordered that respondent-mother should not have any contact with the

IN RE N.A.L. & A.E.L., JR.

[193 N.C. App. 114 (2008)]

children. At the review hearing on 13 September 2006, the trial court noted N.A.L's extensive medical problems, including his diagnosis with Nephrotic Syndrome. The trial court found that respondent-father would likely be unable to provide appropriate care for N.A.L. in the near future because of respondent-father's limitations and N.A.L.'s needs. Based on its findings, the trial court ceased reunification efforts with respondent-father as to N.A.L.

On 9 February 2007, as to N.A.L., DSS filed a petition to terminate the parental rights of respondent-mother on the grounds of abuse or neglect, failure to make reasonable progress, incapability to provide proper care, and wilful abandonment. DSS also petitioned to terminate respondent-father's parental rights on the grounds of failure to make reasonable progress and incapability to provide proper care.

On 7 March 2007, the trial court returned custody of A.E.L., Jr. to respondent-father and ceased further reviews. The trial court ordered that respondent-mother have no contact with A.E.L., Jr. "at any time by any means." On 25 April 2007, DSS social workers visited respondent-mother's home and found respondent-father there with A.E.L., Jr. Respondent-father also admitted to allowing A.E.L., Jr. to have contact with respondent-mother on several occasions. DSS filed a new petition and requested and obtained non-secure custody of A.E.L., Jr. On 22 August 2007, the trial court ceased all reunification efforts with respondent-father as to A.E.L., Jr. and changed the permanent plan to adoption.

On 9 November 2007, DSS filed a petition to terminate the parental rights of respondent-mother and respondent-father as to A.E.L., Jr. The petition alleged grounds existed to terminate respondent-mother's parental rights on the basis of abuse or neglect, failure to make reasonable progress, failure to pay a reasonable portion of the cost of care, incapability to provide proper care, wilful abandonment, and her rights to another child have been involuntarily terminated. The petition alleged grounds existed to terminate respondent-father's parental rights on the basis of abuse or neglect, failure to make reasonable progress, incapability to of provide proper care, and his rights to another child have been involuntarily terminated.

On 20 February 2007 and 27 February 2007, the trial court entered orders terminating respondent-mother's and respondent-father's parental rights to N.A.L. and A.E.L., Jr., respectively. Respondent-mother and respondent-father appeal.

IN RE N.A.L. & A.E.L., JR.

[193 N.C. App. 114 (2008)]

On appeal, respondent-mother argues the trial court erred by failing to appoint a guardian *ad litem*. Respondent-father argues the trial court erred by: (I) terminating his parental rights on the basis of neglect, failure to make reasonable progress, and dependency; (II) finding it in the children's best interest to terminate respondent-father's parental rights; and (III) ceasing reunification efforts between respondent-father and A.E.L., Jr.

### Respondent-Mother's Appeal

[1] Respondent-mother argues the trial court erred by failing to appoint a guardian *ad litem* pursuant to N.C. Gen. Stat. § 7B-1101.1. We agree.

The Juvenile Code Provides:

> On motion of any party or on the court's own motion, the court *may* appoint a guardian ad litem for a parent if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest. The parent's counsel shall not be appointed to serve as the guardian ad litem.

N.C. Gen. Stat. § 7B-1101.1(c) (2007) (emphasis supplied). "A trial judge has a duty to properly inquire into the competency of a litigant in a civil trial or proceeding when circumstances are brought to the judge's attention, which raise a substantial question as to whether the litigant is *non compos mentis*." *In re J.A.A. & S.A.A.*, 175 N.C. App. 66, 72, 623 S.E.2d 45, 49 (2005). "Whether the circumstances are sufficient to raise a substantial question as to the party's competency is a matter to be initially determined in the sound discretion of the trial judge." *Id.* (quotations omitted).

Here, respondent-mother did not move for appointment of a guardian *ad litem*. However, the petitions filed on 7 March 2007 and 9 November 2007 alleged that N.A.L. and A.E.L., Jr. were dependent. The petitions specifically alleged respondent-mother was "incapable of providing for the proper care and supervision of the minor child" due to respondent-mother's "problems in controlling her anger outbursts; her significant tendency to be aggressive towards others, including her child; and her lack of understanding of her prior neglect of the minor child." Additionally, respondent-mother's psychological assessment determined she has a Full Scale IQ score of 74—a score well below average. Respondent-mother was also diagnosed as having Personality Disorder NOS and Borderline Intellectual Function-

ing. The trial court also found in its order terminating the parental rights of respondent-mother that she "has significant mental health issues which impact her ability to parent this child and meet his needs."

Previously, a trial court was required to appoint a guardian *ad litem* when the petition to terminate parental rights alleged grounds existed to terminate parental rights under § 7B-1111(a)(6) (dependency). *In re J.D.*, 164 N.C. App. 176, 180, *disc. rev. denied*, 358 N.C. 732, 601 S.E.2d 531 (2004). Given the allegations made by DSS and the diagnosis of respondent-mother, we believe the record indicates the trial court should have "properly inquired into" respondent-mother's competency pursuant to N.C. Gen. Stat. § 1A-1, Rule 17 and determined whether respondent-mother was in need of a guardian *ad litem*. Therefore, we must reverse the order of the trial court and remand in accordance with this opinion for a hearing to determine whether respondent-mother was in need of a guardian *ad litem*. By this remand we do not hold the trial court abused its discretion and erred by not appointing a guardian *ad litem*; however, based on the facts of this case it appears the trial court abused its discretion by failing to conduct an inquiry as to whether respondent-mother should be appointed a guardian *ad litem*.

### Respondent-father's appeal

Termination of parental rights involves a two-step process. *In re Blackburn*, 142 N.C. App. 607, 610, 543 S.E.2d 906, 908 (2001). At the adjudicatory stage, "the petitioner has the burden of establishing by clear and convincing evidence that at least one of the statutory grounds listed in N.C. Gen. Stat. § 7B-1111 exists." *In re Anderson*, 151 N.C. App. 94, 97, 564 S.E.2d 599, 602 (2002). "If the trial court determines that grounds for termination exist, it proceeds to the dispositional stage, and must consider whether terminating parental rights is in the best interests of the child." *Id.* at 98, 564 S.E.2d at 602. The trial court's decision to terminate parental rights is reviewed under an abuse of discretion standard. *Id.*

### Grounds for Termination

[2] Respondent-father contends the trial court erred by terminating his parental rights to N.A.L. and A.E.L., Jr. The trial court found three grounds existed to terminate respondent-father's parental rights. Because we find that the trial court did not err by terminating respondent-father's parental rights on the basis of willfully leaving the children in foster care for more than twelve months without mak-

ing reasonable progress, we need not address the remaining grounds for termination.[2]

Pursuant to N.C. Gen. Stat. § 7B-1111(a)(2), parental rights may be terminated upon a finding that "the parent has willfully left the juvenile in foster care or placement outside the home for more than 12 months without showing to the satisfaction of the court that reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen. Stat. § 7B-1111(a)(2) (2007). "Willfulness under this section is less than willful abandonment, and does not require a finding of fault." *In re Clark*, 159 N.C. App. 75, 83-84, 582 S.E.2d 657, 662 (2003). "Willfulness may be found where even though a parent has made some attempt to regain custody of the child, the parent has failed to show reasonable progress or a positive response to the diligent efforts of DSS." *Id.* (quotations omitted).

Here, although respondent-father had made some progress, at the time of the termination hearing, respondent-father was unemployed, had not maintained suitable housing for the children, and had not participated in court-ordered anger management counseling. Most significantly, respondent-father continued to allow A.E.L., Jr. to be in the presence of his mother despite numerous orders by the court prohibiting any contact between the mother and the children. Respondent-father continued to rely on others for help with A.E.L., Jr. while he was in his care. Respondent-father had not demonstrated that he was able to care for one child without significant help from others, much less two children, one of whom required special medical care.

Although respondent-father argues the trial court was required to find that he willfully left his children in foster care, we have consistently held that the term "wilfulness" under G.S. 7B-1111(a)(2) is less than willful abandonment. *Clark*, 159 N.C. App. at 83, 582 S.E.2d at 662. This assignment of error is overruled.

### Best Interest of the Children

[3] Respondent-father also argues the trial court erred by terminating his parental rights because it was not in the best interest of the children.

---

2. Where an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds. See *In re Greene*, 152 N.C. App. 410, 416, 568 S.E.2d 634, 638 (2002).

**IN RE N.A.L. & A.E.L., JR.**

[193 N.C. App. 114 (2008)]

Once the trial court determines that grounds exist to terminate parental rights, it proceeds to the dispositional stage and must determine whether termination is in the best interest of the children. *In re Anderson*, 151 N.C. App. at 98, 564 S.E.2d at 602. In making this determination, the trial court shall consider:

(1) The age of the juvenile.

(2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C. Gen. Stat. § 7B-1110(a) (2007). The trial court's determination of the child's best interest lies within its sound discretion and is reviewed only for abuse of discretion. *In re T.L.B.*, 167 N.C. App. 298, 301, 605 S.E.2d 249, 251 (2004).

In its dispositional order, the trial court found, as to N.A.L., that he was four years old and had been in the custody of DSS for almost three years. He had been placed with a family for over a year; he suffers from Nephrotic Syndrome which requires frequent medical visits and a monitored diet; the child needed to be with a family that understood and could care for his needs; respondent-father was unable to do so and failed to demonstrate his understanding of the child's needs; the minor child was bonding well with his placement family; little or no bond existed between respondent-father and the child.

As to A.E.L., Jr., the trial court made the following findings: a strong bond existed between respondent-father and the child; however, respondent-father did not demonstrate an understanding of the needs of the child; respondent-father's plan to care for the child continued to involve respondent-mother; the child had been in an out-of-home placement for five months; his grades had improved and he was participating in therapy on a regular basis; and the child was bonding with his placement family. Most notably, the trial court found A.E.L., Jr. had changed remarkably since being placed with his current fam-

IN RE N.A.L. & A.E.L., JR.

[193 N.C. App. 114 (2008)]

ily. He was reading above grade level and was maintaining grades of C and above.

Based on the above findings, we can not say the trial court abused its discretion by determining it was in the best interest of the children to terminate respondent-father's parental rights.

### Dispositional Order

[4] Finally, respondent-father argues the trial court erred by ceasing reunification efforts with A.E.L., Jr. We disagree.

Pursuant to N.C. Gen. Stat. § 7B-1001(a)(5)(a), a party may appeal from an order ceasing reunification efforts if:

1. A motion or petition to terminate the parent's rights is heard and granted.

2. The order terminating parental rights is appealed in a proper and timely manner.

3. The order to cease reunification is assigned as an error in the record on appeal of the termination of parental rights.

N.C. Gen. Stat. § 7B-1001(a)(5)(a) (2007). Here, after respondent-father's rights were terminated, he gave notice of appeal in open court from the order of the trial court ceasing reunification efforts, and assigned error to the order ceasing reunification efforts. Therefore, respondent-father properly preserved this issue for appeal. However, respondent-father has failed to cite any legal authority in support of his argument. Therefore, this assignment of error must be dismissed. *See* N.C. R. App. P. 28(b)(6) (2007).

For the foregoing reasons, the order of the trial court is affirmed in part, and reversed and remanded in part.

AFFIRMED in part; REVERSED and REMANDED in part.

Judges JACKSON and ARROWOOD concur.