IN RE S.R. & N.R.

[207 N.C. App. 102 (2010)]

IN THE MATTER OF: S.R. AND N.R.

No. COA10-337

(Filed 7 September 2010)

**1. Termination of Parental Rights— appointment of guardian ad litem for parent—no abuse of discretion**

The trial court did not abuse its discretion by not appointing respondent mother a *guardian ad litem sua sponte* in a termination of parental rights proceeding. There was no allegation of dependency as a ground for termination, no allegation that respondent mother's substance abuse and mental health issues resulted in a diminished capacity or rendered her incompetent to participate in the proceedings, and nothing in the proceedings raised a question regarding respondent mother's competency.

**2. Termination of Parental Rights— best interest of the juveniles—statutory factors considered—no abuse of discretion**

The trial court did not abuse its discretion in terminating respondent mother's parental rights where evidence in the record indicated that the trial court considered all of the statutory factors under N.C.G.S. § 7B-1110(a) before determining that termination of parental rights was in the best interest of the juveniles.

Appeal by respondent mother from order dated 23 November 2009 by Judge Rickye McKoy-Mitchell in Mecklenburg County District Court. Heard in the Court of Appeals 16 August 2010.

*Kathleen Arundell Widelski for petitioner-appellee Mecklenburg County Department of Social Services.*

*Parker Poe Adams & Bernstein, by Jennifer L. Ma, for guardian ad litem.*

*Charlotte Gail Blake for respondent-appellant mother.*

BRYANT, Judge.

Where there were no allegations of dependency as a ground for termination, no allegation that respondent-mother's substance abuse and mental health issues resulted in a diminished capacity or rendered her incompetent to participate in the proceedings, and nothing in the proceedings raised a question regarding respondent-mother's competency, the trial court did not abuse its discretion by not appointing

respondent-mother a guardian *ad litem sua sponte*. Further, where evidence in the record indicates that the trial court considered all of the statutory factors under N.C. Gen. Stat § 7B-1110(a) before determining that termination of parental rights was in the best interest of the juveniles, the trial court did not abuse its discretion.

*Facts*

This appeal concerns the termination of respondent-mother's parental rights to juveniles S.R. and N.R.[1] The juveniles have different fathers. Both fathers' parental rights were terminated in the trial court's order. Neither father appeals.

On 15 November 2006, the Mecklenburg County Department of Social Services, Youth and Family Services Division ("YFS"), filed a juvenile petition alleging that S.R. and N.R. were neglected and dependent juveniles. The petition alleged that YFS had been involved with respondent-mother and her children since 2004. In September 2006, YFS received a referral regarding respondent-mother's mental health needs, her lack of stable housing and employment, her substance abuse, and her inappropriate care of the children. YFS investigated the referral, and respondent-mother agreed to place the children with her father and stepmother—the children's maternal grandparents. However, on 13 November 2006, respondent-mother removed the children from the grandparents' home without notifying YFS. The petition further alleged several incidents in which respondent-mother failed to seek proper medical care for the children and failed to provide proper care and supervision for the children.

During the September investigation, respondent-mother admitted to YFS that she continued to use illegal drugs, and she was referred to the McLeod Center Intensive Outpatient Treatment Program. YFS alleged that respondent-mother continued to test positive while in the program and was dismissed from it on 8 November 2006. Lastly, the petition alleged that respondent-mother had been diagnosed with bipolar disorder but failed to take prescribed medication, had issues with controlling her anger, and lacked stable housing and employment.

According to the petition, S.R.'s father had been providing child support to respondent-mother. S.R.'s father admitted to being arrested in 1996 for selling drugs. At the time the petition was filed, N.R.'s paternity had not been established, but N.R.'s putative father lived in Mexico, had not maintained a relationship with N.R., and had

---

1. Initials have been used throughout to protect the identity of the juveniles.

IN RE S.R. & N.R.

[207 N.C. App. 102 (2010)]

not provided financial assistance for the care of N.R. In a nonsecure custody order entered the same day, the trial court gave YFS custody of the children, and they were placed with respondent-mother's great-grandmother (the children's great-great-grandmother).

On 22 December 2006, YFS conducted a mediation with respondent-mother and S.R.'s father. By order dated 4 January 2007, the trial court adjudicated the children neglected and dependent, based on mediated agreements entered into by respondent-mother and S.R.'s father. N.R.'s paternity had still not been established at the time of the adjudication and the putative father did not participate in the proceedings. In the order, the trial court found that respondent-mother stipulated to the allegations contained in the mediated agreement, which mirrored the allegations contained in the juvenile petition.

On the same day, the trial court entered a separate disposition order, in which it concluded that the permanent plan for the children was reunification. The trial court kept the children in the custody of YFS and in the placement with respondent-mother's great-grandmother. The parents were awarded supervised visitation. Respondent-mother's case plan also required her to: (1) follow through with all recommendations that resulted from her F.I.R.S.T. (Families in Recovery to Stay Together) assessment; (2) complete substance abuse and alcohol abuse treatment and maintain sobriety on an ongoing basis; (3) complete a mental health assessment, following through with all recommendations, and take any prescribed medication; (4) complete a domestic violence assessment and follow through with all recommendations; (5) complete parenting classes; (6) obtain legal, stable employment; (7) maintain safe, stable, and appropriate housing for herself and the children; and (8) maintain regular contact with YFS social worker Brenda Burns.

The trial court held a permanency planning hearing on 2 and 3 October 2007 and entered a corresponding order on 30 November 2007. At this time, respondent-mother had not complied with any of the directives in her case plan, and the trial court made the following finding of fact:

> The mother is diagnosed with Bipolar disorder. She missed a medication appointment in March 2007. YFS has no knowledge of the mother participating in therapeutic services. The mother has a history of substance abuse. She continued use of illegal substances while participating in substance abuse treatment. She was unsuccessfully discharged from treatment

due to excessive absences. The mother is not currently engaged in substance abuse treatment. She testified that she is on a waiting list for treatment in Iredell County. The mother does not have independent housing.

Again, the trial court ordered respondent-mother to comply with her case plan. Based on the foregoing, the trial court suspended efforts to reunify the juveniles with the mother. However, the trial court declined to order termination of parental rights at that time.

At the permanency planning hearing, YFS requested that the children be removed from the placement with respondent-mother's great-grandmother on the grounds that the placement was no longer in the children's best interests. The trial court found that YFS had not provided sufficient information to establish that the children's placement was contrary to their best interests and therefore ordered the children to remain with the great-grandmother. At the next three permanency planning hearings, conducted on 31 January 2008, 24 April 2008, and 26 June 2008, the circumstances of the case had not changed. At the time of the fifth permanency planning hearing, held on 31 July 2008, circumstances surrounding the juveniles had started to decline, and the trial court changed the permanent plan to termination of parental rights and adoption, while maintaining a concurrent plan of legal guardianship with a relative. YFS was ordered to investigate possible relative placements. On 7 August 2008, S.R. and N.R. were removed from the great-grandmother's home and placed in a foster home.

In September 2008, YFS filed petitions to terminate all three parents' rights to S.R. and N.R. The trial court conducted a termination hearing on 16 and 17 March 2009, 22 May 2009, and 22 and 23 July 2009. The trial court heard testimony from YFS social worker Brenda Burns, S.R.'s therapist, Mariah Curran, Ph.D., and N.R.'s therapist, Lydia Duncan. Respondent-mother testified on her own behalf at the hearing and also called the great-grandmother as a witness. Following the hearing, the trial court entered an order on or about 23 November 2009 terminating all three parents' parental rights. In its order the trial made the following findings of fact, *inter alia*, regarding respondent-mother's failure to comply with her case plan:

> 12. As of the end of this trial on 23 July 2009, [respondent-mother] has not completed an intensive outpatient substance abuse treatment program. Her testimony was that she needed to complete a program at Anuvia in order to

IN RE S.R. & N.R.

[207 N.C. App. 102 (2010)]

receive her driver's license, which she has never secured since her offense in Juvenile Court in 1998.

13. She intends to complete a substance abuse program at Anuvia, which is the same program as the Chemical Dependency Center, where she was enrolled in late 2006 and early 2007. Despite having over two and one half years to complete this program, [respondent-]mother has failed to do so. Substance abuse, the most important issue in her case plan, remains unaddressed.

. . .

16. At this trial, [respondent-]mother admitted she had not followed through with [mental health] counseling and was not taking her medication [for bipolar disorder]. She testified that she [had] been evaluated at a different mental health center in Rutherford County and had been given a different diagnosis.

17. But [respondent-mother] presented no proof she had been evaluated there and had received a different diagnosis. Because she failed to share this information with the court or her social worker prior to the last day of the trial, there was no way to verify this information or to determine if she [was] complying with the recommendations of those mental health professionals. The mother has failed to comply with the mental health components of her case plan.

. . .

20. While her children have been in custody for almost three years, the mother has reported on two brief periods of employment. She worked for a dry cleaner in Mooresville in 2007 and reported at a court hearing in 2008 that she was going to begin work at an Arby's restaurant.

21. At this trial, [respondent-mother] was still unemployed. She admitted she never actually had a job at Arby's.

. . .

23. . . . . [Respondent-]mother does not have a suitable home for the children.

24. Since November 2006, the mother has moved from Charlotte to Mooresville, to Rowan County, to Forest City and now back to Charlotte, where she is living with her great grandmother []. The mother has never resolved the issue of her unstable housing.

25. The mother has unresolved issues with anger control. At a visit in the past year, she bought a bag of candy for her children. When told she could not give the candy to the children, the mother threw the bag into a trash can in front of her children and left the visit.

26. More recently, the mother called the social worker and left an inappropriate message on the worker's voice mail box. Had the mother remained in therapy and in contact with her mental health professionals, this issue may have been resolved.

The trial court found the existence of the following grounds to terminate respondent-mother's parental rights: (1) neglect; (2) willfully leaving the juveniles in foster care for more than twelve months without showing reasonable progress to correct the conditions that led to removal; and (3) willfully failing to pay a reasonable portion of the cost of care for the juveniles. In several dispositional findings, the trial court outlined the children's placement history, as well as YFS's efforts to keep the children in a kinship placement. However, none of the potential placements were approved, and the trial court found that the children's foster parents were interested in adoption. The trial court then determined that it was in the children's best interests to terminate respondents' parental rights. From this order, respondent-mother appeals.

On appeal, respondent-mother contends the trial court abused its discretion by failing (I) to appoint a guardian ad litem for respondent-mother pursuant to N.C. Gen. Stat. § 7B-1101.1; and (II) to consider all of the factors set out in N.C. Gen. Stat. § 7B-1110. We note that respondent-mother does not challenge the trial court's conclusions that grounds existed to terminate her parental rights to S.R. and N.R. Nor does she make any other challenges to the adjudicatory stage of the termination proceedings. Therefore, the trial court's adjudication of grounds for terminating respondent-mother's parental rights is binding on appeal.

IN RE S.R. & N.R.

[207 N.C. App. 102 (2010)]

*I*

**[1]** Respondent-mother first argues the trial court erred by failing to appoint a guardian *ad litem* for respondent-mother, pursuant to N.C. Gen. Stat. § 7B-1101.1(c) (2009), given respondent-mother's history of substance abuse, mental health issues, and issues with controlling her anger. We disagree.

Section 7B-1101.1(c) provides:

> On motion of any party or on the court's own motion, the court may appoint a guardian ad litem for a parent . . . if the court determines that there is a reasonable basis to believe that the parent is incompetent or has diminished capacity and cannot adequately act in his or her own interest. . . .

*Id.* " 'A trial judge has a duty to properly inquire into the competency of a litigant in a civil trial or proceeding when circumstances are brought to the judge's attention, which raise a substantial question as to whether the litigant is *non compos mentis.*' " In re *C.G.A.M.*, 193 N.C. App. 386, 390, 671 S.E.2d 1, 4 (2008) (quoting *In re J.A.A.*, 175 N.C. App. 66, 72, 623 S.E.2d 45, 49 (2005)). However, "the trial court is not required to appoint a guardian *ad litem* 'in every case where substance abuse or some other cognitive limitation is alleged.' " *In re J.A.A.*, 175 N.C. App. at 71, 623 S.E.2d at 48 (quoting *In re H.W.*, 163 N.C. App. 438, 447, 594 S.E.2d 211, 216 (2004)). Whether to conduct such an inquiry is left to the sound discretion of the trial judge. *In re C.G.A.M.*, 193 N.C. App. at 390, 671 S.E.2d at 4 (internal citation omitted).

Respondent-mother contends that the trial court had a duty to appoint a guardian *ad litem sua sponte due* to her history of substance abuse, potentially untreated mental health issues, and issues controlling her anger, citing *In re N.A.L.*, 193 N.C. App. 114, 666 S.E.2d 768 (2008), in support of her argument. In *In re N.A.L.*, we held that the trial court abused its discretion by failing to conduct an inquiry as to whether the mother should have been appointed a guardian *ad litem*, where the mother was diagnosed as having Personality Disorder NOS and Borderline Intellectual Functioning, a Full Scale IQ score of 74, and problems controlling her anger. *Id.* at 118-19, 666 S.E.2d at 771-72. After review of the record in this matter, we find this case distinguishable from *In re N.A.L.* and see no abuse of discretion in the trial court's failure to appoint respondent-mother a guardian *ad litem*.

In *In re N.A.L.*, the petitions alleged dependency as a ground for termination and specifically alleged that the mother was " 'incapable

IN RE S.R. & N.R.

[207 N.C. App. 102 (2010)]

of providing for the proper care and supervision of the minor child.' " *Id.* at 118, 666 S.E.2d at 771. Here, YFS did not allege dependency as a ground for termination and there is no allegation that respondent-mother's substance abuse and mental health issues resulted in a diminished capacity or rendered her incompetent to participate in the proceedings. Further, nothing in the proceedings raised a question regarding respondent-mother's competency. The trial court conducted two pretrial hearings before the termination hearing, and the issue was never raised. Throughout, respondent-mother demonstrated sufficient competency to attend and participate in hearings, enter into a mediated agreement regarding the children's adjudication, enter into a mediated case plan, and file with the trial court a "Summary of Concerns" regarding the children's visits with their maternal grandparents. Respondent-mother testified on her own behalf at the termination hearing, and nothing in her testimony suggests that she was not competent to participate. Moreover, the record establishes that respondent-mother was well aware of her problems and of what she needed to do to resolve them, but showed an unwillingness to cooperate. She had been in and out of treatment for several years, and made little effort during the two-and-one-half-year history of the case. At the hearing, respondent-mother knew that she needed treatment for substance abuse, and testified that she intended to enter a treatment program. However, her efforts came too late. Based on the foregoing, we conclude that the trial court did not abuse its discretion in not appointing a guardian ad litem sua sponte for respondent-mother.

*II*

**[2]** Respondent-mother also argues the trial court abused its discretion by failing to consider all of the statutory factors before determining that termination of her parental rights was in the best interest of N.R. and S.R. We disagree.

After an adjudication determining that grounds existed for terminating parental rights, the trial court determines whether terminating the parent's rights is in the juvenile's best interest. N.C. Gen. Stat. § 7B-1110(a) (2009). The statute provides that:

> In making this determination, the court shall consider the following:
>
> (1) The age of the juvenile.
>
> (2) The likelihood of adoption of the juvenile.

(3) Whether the termination of parental rights will aid in the accomplishment of the permanent plan for the juvenile.

(4) The bond between the juvenile and the parent.

(5) The quality of the relationship between the juvenile and the proposed adoptive parent, guardian, custodian, or other permanent placement.

(6) Any relevant consideration.

N.C.G.S. § 7B-1110(a). We review the trial court's determination that a termination of parental rights is in the best interest of the juvenile for an abuse of discretion. *In re Anderson*, 151 N.C. App. 94, 98, 564 S.E.2d 599, 602 (2002). "Abuse of discretion exists when the challenged actions are manifestly unsupported by reason." *Barnes v. Wells*, 165 N.C. App. 575, 580, 599 S.E.2d 585, 589 (2004) (internal citations and quotation marks omitted).

Section 7B-110 specifies that the trial "court *shall* consider" each of the listed factors. "This Court has held that use of the language 'shall' is a mandate to trial judges, and that failure to comply with the statutory mandate is reversible error." *In re Eades*, 143 N.C. App. 712, 713, 547 S.E.2d 146, 147 (2001). However, this Court has previously held that it is not an abuse of discretion for the trial court to omit a specific written finding on a statutory factor under section 7B-1110(a), so long as it is apparent that the trial court *considered* all relevant factors. *In re S.C.H.*, —— N.C. App. ——, ——, 682 S.E.2d 469, 475 (2009), *affirmed per curiam*, 363 N.C. 828, 689 S.E.2d 858 (2010). In *In re S.C.H.*, the trial court made specific findings addressing each statutory factor except for the bond between the parent and juvenile. *See* N.C.G.S. § 7B-1110(a)(4). However, this Court stated that, "in light of the trial court's findings in its adjudication order that respondents last provided gifts to S.C.H. in December 2007; that they have not given any cards or letters to S.C.H.; and that they canceled two of the five visits granted by the trial court in October 2007, it is apparent that the trial court did consider the bond between respondents and S.C.H." *In re S.C.H.*, —— N.C. App. at ——, 682 S.E.2d at 475. This Court thus concluded "that the trial court's findings are not so deficient as to warrant a conclusion that its determination is manifestly unsupported by reason." *Id.*

Respondent-mother cites a recent decision of this Court remanding for entry of appropriate findings under section 7B-1110(a). *In re E.M.*, —— N.C. App. ——, ——, 692 S.E.2d 629, 631 (2010). However, in that case, we determined that

the court's order only reflects consideration of the juvenile's age and the permanent plan of adoption. The court's order does not consider the likelihood of adoption of the juvenile, the bond between the juvenile and the parent, or the quality of the relationship between any prospective adoptive parents, custodian, or guardian and the juvenile.

*Id.* After careful review, we find the case before us more factually analogous to *In re S.C.H.* than to *In re E.M.*

Here, the trial court's order terminating parental rights included the following findings of fact:

2. [S.R.] was born to [respondent-mother] on 4 June 2002. . . . [N.R.] was born to [respondent-mother] on 22 September 2004. . . .

. . .

55. [Respondent-mother] has moved in with [her great-grandmother]. None of [respondent-] mother's issues that led to the children coming [into] custody and then to placement in foster care have been resolved. There is no alternative other than leaving the children in foster care.

56. Since entering foster care, the children's attendance at therapy and response to therapy has improved dramatically. Their demeanor has improved. Both children have blossomed and their shyness has abated.

. . .

65. The children have been in the same foster home placement for over a year. The foster parents are interested in adopting the children.

Thus, the trial court made findings concerning the age of the juveniles, the likelihood of adoption, and whether termination will aid in the accomplishment of a permanent plan for the juveniles. The trial court did not make specific findings regarding the bond between respondent-mother and the juveniles and the bond between the foster parents and the juveniles in its order terminating respondent-mother's parental rights. However, as in *In re S.C.R.*, we find evidence in the record demonstrates that the trial court considered these factors in making its dispositional decision.

In its permanency planning review order filed 13 October 2009, the trial court attached and incorporated by reference the YFS report

in its findings of fact. The YFS report, in turn, states that the "children have blossomed since being placed in the foster home and are bonded with the foster parents. . . . It is apparent that the children and the foster parents are very bonded with each other." The report also details the foster parents' involvement with the children during therapy sessions, vacations, educational outings, sports and other extracurricular activities. The YFS report also refers to respondent-mother's "persistent inability to display positive emotional connections with the children during visits[.]" These findings indicate that the trial court considered the bond between respondent-mother and the juveniles and the bond between the foster parents and the juveniles.

Thus, although we emphasize that the better practice is for trial courts to make specific findings related to the factors listed in section 7B-1110(a) in orders terminating parental rights, we conclude "that the trial court's findings are not so deficient as to warrant a conclusion that its determination is manifestly unsupported by reason." *In re S.C.H.*, —— N.C. App. at ——, 682 S.E.2d at 475. Therefore, the trial court did not abuse its discretion in this regard.

Affirmed.

Judges MCGEE and GEER concur.