An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA14-517
NORTH CAROLINA COURT OF APPEALS

Filed:  7 October 2014

IN THE MATTER OF:                    Alamance County
C.O.W.                               No. 12 JT 101


Appeal by respondent-father from order entered 29 January 2014 by Judge Kathryn Overby in Alamance County District Court. Heard in the Court of Appeals 9 September 2014.

> *Jamie L. Hamlett, for appellee Alamance County Department of Social Services.*
>
> *Derrick J. Hensley, for guardian ad litem.*
>
> *Ryan McKaig, for respondent-appellant father.*


CALABRIA, Judge.


Respondent-father ("respondent") appeals from the order terminating his parental rights to the minor child C.O.W. ("Clay")[1].  Since Clay's mother relinquished her parental rights, she is not participating in this appeal.  We affirm.

The Alamance County Department of Social Services ("DSS")

---

[1]We use pseudonyms to protect the privacy of the juveniles discussed in this opinion and for ease of reading.

became involved with the family after receiving reports of, *inter alia*, domestic violence and drug abuse in the home. In July 2012, DSS obtained nonsecure custody of Clay and his half-sisters F.M. ("Freda") and B.M. ("Bonnie"), who also lived in the home.[2] DSS filed petitions alleging that Clay was a neglected and dependent juvenile and that Freda and Bonnie were abused, neglected, and dependent. The trial court subsequently adjudicated Freda and Bonnie as abused, neglected, and dependent juveniles. Clay was adjudicated neglected and dependent.

In its dispositional order, the trial court found that respondent had been charged with felony child abuse based on events involved in the case and had additional pending criminal charges. The trial court ordered respondent to obtain psychological, parenting, and substance abuse evaluations and follow any recommendations; to participate in "ongoing mental health treatment" regarding issues of domestic violence and anger management; to establish and comply with a child support schedule through the local enforcement agency; and to maintain regular contact with DSS and sign releases with his service providers to allow DSS access to relevant information.

After a permanency planning review hearing in June 2013,

---

[2] The juveniles have different fathers. Only Clay is the subject of this appeal.

the trial court found that further efforts to reunify respondent with Clay would be futile. The trial court ceased reunification efforts as to respondent and established a primary permanent plan of adoption with a secondary permanent plan of guardianship.

On 16 August 2013, DSS filed a petition to terminate respondent's parental rights. DSS alleged grounds existed to terminate respondent's parental rights based upon neglect, failure to make reasonable progress, and failure to pay a reasonable portion of the cost of care pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (2), (3) (2013). At the hearing, the trial court heard testimony from the juveniles' mother, Meredith Davis and Adrien Crawford of the Alamance County Child Support Agency, DSS social worker Ginger Kunkel, and respondent. After finding that Clay's mother had previously relinquished her parental rights, the trial court also found and concluded that all three grounds that DSS alleged existed. The court further concluded that it was in Clay's best interests to terminate respondent's parental rights. Respondent appeals.

As an initial matter, respondent states that he challenges the existence of evidence to justify the three grounds for termination found by the trial court. However, respondent fails

to present an argument or any supporting authority for this statement regarding the grounds for termination. Therefore, any such argument is deemed abandoned. *See* N.C.R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

Respondent argues that the trial court erred in terminating his parental rights because the evidence presented at the hearing and the trial court's findings demonstrate that respondent and Clay shared a bond, and that respondent is capable of appropriately interacting with Clay. Therefore, respondent contends, termination of his parental rights is not in Clay's best interests because they share a loving parent-child bond.

"We review the trial court's determination that a termination of parental rights is in the best interest of the juvenile for an abuse of discretion." *In re S.R.*, 207 N.C. App. 102, 110, 698 S.E.2d 535, 541 (2010). "Abuse of discretion exists when the challenged actions are manifestly unsupported by reason." *Id*. (citation and internal quotation marks omitted).

"A finding of any one of the enumerated grounds for termination of parental rights under N.C.G.S. 7B-1111 is

sufficient to support a termination." *In re Humphrey*, 156 N.C. App. 533, 540, 577 S.E.2d 421, 426 (2003) (citation omitted). "After an adjudication that one or more grounds for terminating a parent's rights exist, the court shall determine whether terminating the parent's rights is in the juvenile's best interest." N.C. Gen. Stat. § 7B-1110(a) (2013). In determining whether terminating the parent's rights is in the juvenile's best interests, the court shall consider several factors, including the juvenile's age and the likelihood of adoption; the parent-child bond; whether the termination of parental rights will aid in the juvenile's DSS permanent plan; the quality of the relationship between the juvenile and the proposed adoptive parent; and any other relevant consideration. *Id.*

The parent-child bond is only one of the factors considered under the statute, and by itself is not dispositive. *See id.*; *see In re C.L.C.*, 171 N.C. App. 438, 448, 615 S.E.2d 704, 709-10 (2005) (upholding decision to terminate parental rights when a respondent's bond with her children was outweighed by other facts, including, *inter alia*, her failure to complete parenting classes, pay support, or obtain stable housing and employment). "The fact that the parent loves or is concerned about his child will not necessarily prevent the court from making a

determination . . . . The welfare or best interest of the child is always to be treated as the paramount consideration[.]" *In re P.L.P.*, 173 N.C. App. 1, 9, 618 S.E.2d 241, 246 (2005) (quoting *In re Montgomery*, 311 N.C. 101, 109, 316 S.E.2d 246, 252 (1984)) (internal quotation marks omitted).

In the instant case, during the dispositional phase, the trial court made detailed findings regarding the juvenile's age, likelihood of adoption, whether termination would aid in a permanent plan for the juvenile, the bond between the juvenile and the parent, and the quality of the relationship between the juvenile and the proposed adoptive family. Specifically, the trial court found that Clay enjoyed a high quality relationship with his foster family, who wished to adopt him, and that termination of respondent's parental rights would aid in the implementation of Clay's permanent plan. The trial court further found that due to Clay's young age, permanency was very important for him. The foster family had cared for Clay since he was only a few months old. Furthermore, the foster family also wished to adopt Clay's half-sisters, ensuring that the sibling group would remain intact. Moreover, respondent does not challenge the trial court's findings of fact. Therefore, they are binding on appeal. *Koufman v. Koufman*, 330 N.C. 93,

97, 408 S.E.2d 729, 731 (1991). These uncontested findings address the relevant factors in N.C. Gen. Stat. § 7B-1110(a).

Although respondent regularly and appropriately visited with Clay, and Clay and respondent had developed a relationship, respondent was unable to provide a safe home for Clay, "despite having had an extended period of time to work to resolve issues of concern." The trial court's findings reflect its consideration of respondent's "bond and relationship" with Clay as one of the necessary statutory factors at disposition. However, the trial court was "entitled to give greater weight to other facts that it found," including respondent's refusal to cooperate with DSS, refusal to engage in court-ordered services, minimal payment of child support, and inability to provide a safe home for Clay. *In re C.L.C.*, 171 N.C. App. at 448, 615 S.E.2d at 709.

The trial court's findings indicate that the court considered the relevant statutory factors in its determination that termination of respondent's parental rights were in Clay's best interests. "The welfare or best interest of the child is always to be treated as the paramount consideration[.]" *In re P.L.P.*, 173 N.C. App. at 9, 618 S.E.2d at 246 (quoting *In re Montgomery*, 311 N.C. at 109, 316 S.E.2d at 252). The trial

court made a reasoned decision that termination of respondent's parental rights was in Clay's best interests. Accordingly, we conclude that the trial court did not abuse its discretion in determining that terminating respondent's parental rights was in Clay's best interests. Therefore, we affirm the order of the trial court.

Affirmed.

Judges STEELMAN and McCULLOUGH concur.

Report per Rule 30(e).