IN RE: A.R.G.

No. COA05-1268

(Filed 20 June 2006)

**Child Abuse and Neglect— permanency planning order—not final—appeal interlocutory**

A permanency planning order for a neglected and dependent juvenile directing DSS to pursue adoption after the death of the mother was not a final order as set forth in N.C.G.S. § 7B-1001, and the father's appeal was dismissed as interlocutory.

Judge WYNN dissenting.

Appeal by respondent from order entered 25 May 2005 by Judge David A. Leech in Pitt County District Court. Heard in the Court of Appeals 11 April 2006.

*Anthony Hal Morris, for petitioner-appellee Pitt County Department of Social Services.*

*Annick Lenoir-Peek, for respondent-appellant.*

*Nancy Ray, for Guardian ad Litem.*

LEVINSON, Judge.

Respondent-father purports to appeal from a permanency planning order entered pursuant to the requirements set forth in N.C. Gen. Stat. § 7B-906. The order on appeal does not constitute a final order, and this appeal must therefore be dismissed.

In April 2003, the Pitt County Department of Social Services (DSS) filed a petition alleging that A.R.G. was a neglected and dependent juvenile. In September 2003, the trial court adjudicated the child to be neglected and dependent; awarded custody to DSS; and ordered a goal of reunification with the mother. The trial court entered custody review orders on 26 November 2003, 26 January 2004, and 28 June 2004, under which custody with DSS and the goal of reunification with the mother remained the same. On 14 September 2004, the trial court entered an order allowing DSS to "pursue permanency" for A.R.G. with another family. On 2 November 2004, the mother died as a result of an automobile accident. Following a permanency planning hearing, the trial court entered an order on 25 May

IN RE A.R.G.

[178 N.C. App. 205 (2006)]

2005, concluding that was in the child's best interest for DSS to pursue adoption with the current foster family and to initiate termination of respondent's parental rights. In this order, the trial court found, *inter alia*, that father was unaware of A.R.G.'s foster residence; had sent no letters or cards to A.R.G.; first contacted the assigned social worker for A.R.G. in October, 2004; and "advocated that the permanent plan be placement of his son with his mother[.]"

The record demonstrates that father attended four hearings, as follows:

| | | |
|---|---|---|
| May 08, 2003 | Matter Continued | Father appeared |
| May 21, 2003 | Matter Continued | Did not appear |
| July 16, 2003 | Matter Continued | Did not appear |
| July 31, 2003 | Adjudication Hearing | Did not appear |
| October 23, 2003 | 7B-906 Hearing | Did not appear |
| December 4, 2003 | 7B-906 Hearing | Did not appear |
| March 4, 2004 | 7B-906 Hearing | Did not appear |
| June 3, 2004 | Matter Continued | Did not appear |
| June 24, 2004 | Matter Continued | Did not appear |
| July 29, 2004 | Matter Continued | Did not appear |
| September 2, 2004 | Matter Continued | Did not appear |
| August 12, 2004 | 7B-906 Hearing | Did not appear |
| October 24, 2004 | Matter Continued | Did not appear |
| November 2, 2004 | Mother died | |
| November 4, 2004 | Matter Continued | Father appeared |
| January 13, 2005 | Matter Continued | Father appeared |
| Feb. 24/May 05, 2005 | 7B-906 Hearing | Father appeared |

N.C. Gen. Stat. § 7B-1001 (2003), provides that appeal may be taken from "any final order of the court in a juvenile matter[.]" The statute defines a "final order", and states that it includes:

(1) Any order finding absence of jurisdiction;

(2) Any order which in effect determines the action and prevents a judgment from which appeal might be taken;

(3) Any order of disposition after an adjudication that a juvenile is abused, neglected, or dependent; or

(4) Any order modifying custodial rights.

N.C. Gen. Stat. § 7B-1001 (2003).[1]

---

1. This statute was amended effective October 1, 2005. We apply the version of G.S. § 7B-1001 in effect at the time the order on appeal was entered.

In *In re Weiler*, 158 N.C. App. 473, 581 S.E.2d 134 (2003), this Court concluded that the permanency planning order on appeal constituted a "disposition order" within the meaning of Section (3) of G.S. § 7B-1001 and was therefore appealable. In *Weiler*, the permanency planning order <u>changed</u> the permanent plan "as to mother" from reunification to adoption:

> The present order again changed the disposition from reunification with the mother to termination of parental rights. An order that changes the permanency plan in this manner is a dispositional order that fits squarely within the statutory language of section 7B-1001. . . . Thus, the appeal is properly before us and petitioner's motion to dismiss is denied.

*Id.* at 477, 581 S.E.2d at 136-37.

This Court recently discussed what constitutes a "final" juvenile order, and held that "the statutory language of G.S. § 7B-1001(3), referring to an 'order of disposition after an adjudication that a juvenile is abused, neglected, or dependent', means the dispositional order that is entered after an adjudication [of abuse, neglect or dependency] under G.S. § 7B-905, and **does not** mean every permanency planning, review, or other type of order entered at some unspecified point following such a disposition." *In re B.N.H.*, 170 N.C. App. 157, 160, 611 S.E.2d 888, 890, *disc. review denied*, 359 N.C. 632, 615 S.E.2d 865 (2005). *B.N.H.* further held that this Court would "limit the holding of *Weiler* to the specific facts of that case, and decline[d] to extend its reasoning further." *Id.* at 162, 611 S.E.2d at 891.

In the instant case, A.R.G. was not residing with father at the time he was removed from the custody of mother, and <u>nothing</u> in the record suggests reunification with father was ever the permanent plan. Every order in the record shows, instead, that the court's focus was consistently related to the viability of returning the juvenile to mother and to the specific requirements placed on her to assist in reunification efforts. The court's orders reflect that father had very little contact or involvement with this juvenile following the juvenile's removal from mother's home. Not one court order in the record either allows, encourages, or describes any type of visitation between father and A.R.G. The fact that no type of "reunification" with father was ever a permanent plan is sufficient, in and of itself, to distinguish this appeal from *Weiler*, where the permanent plan as to the mother was <u>changed</u> from reunification to adoption. We nevertheless also

IN RE A.R.G.

[178 N.C. App. 205 (2006)]

observe that, in the G.S. § 7B-906 review order next-preceding the order on appeal, DSS was <u>expressly authorized</u> by the juvenile court to "pursue permanency." Consequently, not only was reunification with father never the plan to begin with—something that would preclude interlocutory appellate review of the subject order under *B.N.H.*, but there also had <u>not been any change</u> in the permanent plan from reunification to adoption—something essential to this Court's review of a permanency planning order in *Weiler*. In short, none of the provisions of G.S. § 7B-1001(1)-(4) apply, and the order on appeal is not a final order for purposes of appeal.

We easily conclude that both the statutory definition of a "final order" set forth in G.S. § 7B-1001, and also our holding in *B.N.H.* requires this Court to dismiss the subject appeal. Father's interlocutory appeal, taken without noting the grounds for appellate review or making a substantial right argument in his brief, illustrates the long delays meant to be avoided by the operation of G.S. § 7B-1001. Father did not have any type of court-sanctioned visitation with A.R.G. before the entry of the order on appeal, and there has never been any goal of reunification of A.R.G. with father. Under these circumstances, and at this juncture of this juvenile proceeding, this interlocutory appeal has done nothing to further the interests of the juvenile or the father.

Dismissed.

Judge ELMORE concurs.

Judge WYNN dissents in a separate opinion.

WYNN, Judge, dissenting.

The majority dismisses this appeal by a parent as being interlocutory because it involves a review order and not a final disposition. Yet, the dispositive issue on appeal is not whether the parent challenges the "outcome" of the review order; instead, the issue is whether DSS may institute proceedings without complying with the statutory mandates for doing so, thus, depriving the trial court of subject-matter jurisdiction. Indeed, audaciously, DSS recognizing that its petition was statutorily deficient, prepared the proper documents after notice of appeal was given to this Court, and by motion, asks this Court to now consider that documentation as part of the record on appeal. I would deny that motion, address this appeal which chal-

lenges the subject-matter jurisdiction of the trial court, and vacate the proceedings below.

Moreover, the review order modified the custodial rights as it changed the plan to adoption and directed DSS to pursue termination of Respondent's parental rights. Therefore, the order was appealable. N.C. Gen. Stat. § 7B-1001(4) (2004). As this order was appealable, I would address the issues and must respectfully dissent.

The majority cites to *In re B.N.H.*, 170 N.C. App. 157, 611 S.E.2d 888 (2005), in support of their argument that the review order is not a final order and not appealable. In *B.N.H.*, this Court held that a permanency planning order that *does not modify custody* is not a final order and not immediately appealable pursuant to N.C. Gen. Stat. § 7B-1001(3). *Id.* at 162, 611 S.E.2d at 891.

Here, the previous review orders and permanency orders sought reunification with the mother, but made no mention of Respondent. The prior 14 September 2004 review order ceased reunification efforts with the mother and allowed DSS to pursue permanency for the minor child, however, again made no orders with respect to Respondent. In the 25 May 2005 review order on appeal, the trial court for the first time entered an order with respect to Respondent, that DSS should pursue termination of his rights and adoption for the minor child. As this was the first order that affected Respondent's parental rights, it is a change in custody and appealable pursuant to N.C. Gen. Stat. § 7B-1001(4). *See also In re Weiler*, 158 N.C. App. 473, 477, 581 S.E.2d 134, 136-37 (2003) (order that changed the disposition from reunification with the mother to termination of parental rights was appealable). Accordingly, as this order is immediately appealable I would address the issues.

On appeal, Respondent argues that the trial court lacked subject matter jurisdiction to enter the order of 25 May 2005 as the petition failed to contain the information required by sections 50A-209(a) and 7B-402. I agree and would vacate the order.

Section 50A-209(a) of the North Carolina General Statutes requires:

In a child-custody proceeding, each party, in its first pleading or in an attached affidavit, shall give information, if reasonably ascertainable, under oath as to the child's present address or whereabouts, the places where the child has lived during the last

five years, and the names and present addresses of the persons with whom the child has lived during that period. . . .

N.C. Gen. Stat. § 50A-209(a) (2003).

The record on appeal confirms that DSS *never* filed an affidavit of status with the trial court. Indeed, DSS did not complete an affidavit until 28 December 2005, over six months after entry of the trial court's 25 May 2005 order and Respondent's 6 June 2005 Notice of Appeal. While DSS filed a Motion to Amend the Record on 29 December 2005, asking this Court to include the affidavit of status dated 28 December 2005, I would deny that motion because the affidavit of status was never before the trial court and therefore should not be included in the record on appeal.

Nonetheless, DSS cites to *In re Clark*, 159 N.C. App. 75, 79, 582 S.E.2d 657, 660 (2003), in support of its argument that failure to properly file an affidavit of status is not reversible error. In *Clark*, the Stokes County Department of Social Services failed to file an affidavit of status at the time of the filing of the petition. *Id.* However, the trial court gave Stokes County DSS five days to comply, and it filed the affidavit within five days. *Id.* at 79-80, 582 S.E.2d at 600. This Court found that "[a]lthough it remains the better practice to require compliance with section 50A-209," as the affidavit was filed prior to the trial court rendering its decision, the trial court was able to determine whether jurisdiction existed. *Id.*

Unlike *Clark*, the trial court in this case was not able to determine whether jurisdiction existed before it rendered its decision as DSS failed to file an affidavit of status. Rather nothing in the record shows that DSS made any effort to comply with the provisions of section 50A-209(a) until well after the the trial court's decision and the Notice of Appeal had been given in this case.

Moreover, the Petition contained in the record on appeal shows that DSS did not include the child's date of birth or address as required by section 7B-402 which states,

The petition shall contain the name, date of birth, address of the juvenile, the name and last known address of the juvenile's parent, . . . and shall allege the facts which invoke jurisdiction over the juvenile. . . .

N.C. Gen. Stat. § 7B-402 (2003).

"[N]atural parents have a constitutionally protected interest in the companionship, custody, care, and control of their children." *Price v. Howard*, 346 N.C. 68, 72, 484 S.E.2d 528, 530 (1997). Therefore, proceedings to terminate constitutionally protected parental rights must be conducted with fairness and due process of the law. *See* N.C. Gen. Stat. § 7B-100(1) (2003) (purpose of Chapter 7B is: "To provide procedures for the hearing of juvenile cases that assure fairness and equity and that protect the constitutional rights of juveniles and parents[.]"). Section 50A-209 requires DSS to file an affidavit of status with the trial court in order to confer jurisdiction to the trial court. Compliance with this statute is a legislative requisite that in this case appears to have been neither difficult nor burdensome on DSS. The letter of the law must be followed to ensure due process of the law in terminating a parent's constitutionally protected right to parent. When, as here, DSS fails to comply with statutes conferring jurisdiction to the trial court, this Court should vacate the trial court's order.

As DSS failed to comply with sections 50A-209 and 7B-402 of the North Carolina General Statutes, the trial court was unable to determine whether jurisdiction existed. Therefore, I would vacate the trial court's decision.