An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

IN THE COURT OF APPEALS OF NORTH CAROLINA

No. COA15-141

Filed: 15 September 2015

Guilford County, No. 13 JT 108

IN THE MATTER OF: X.M.E.R.

Appeal by respondents from order entered 26 November 2014 by Judge Betty J. Brown in Guilford County District Court. Heard in the Court of Appeals 24 August 2015.

> *Mercedes O. Chut for petitioner-appellee Guilford County Department of Health and Human Services.*
>
> *Richard Croutharmel for respondent-appellant Mother.*
>
> *Sydney Batch for respondent-appellant Father.*
>
> *Administrative Office of the Courts, by Appellate Counsel Matthew D. Wunsche and Associate Counsel Deana K. Fleming, for guardian ad litem.*

McCULLOUGH, Judge.

Respondents, the mother and father of the juvenile X.M.E.R., appeal from an order terminating their parental rights. After careful review, we affirm.

## I.       Background

On 22 January 2013, the Guilford County Department of Social Services ("DSS") filed a petition alleging that X.M.E.R. was a neglected and dependent juvenile. When the petition was filed, X.M.E.R. was only four days old. DSS alleged

that respondent-mother had traveled to Virginia to give birth to the juvenile to avoid involvement with DSS. Respondent-mother previously had a child that died while in her care. In 2006, respondent-mother's infant son [J.L.] died after suffering multiple skull fractures, and J.L.'s sibling was removed from her custody. Respondent-mother subsequently entered an *Alford* plea to involuntary manslaughter and felony child abuse. In addition to J.L. and his sibling, respondent-mother has had other children removed from her care due to substantiated allegations of dependency. Based on respondent-mother's history, DSS alleged that it was contrary to the juvenile's welfare for X.M.E.R. to remain in respondent-mother's custody. DSS obtained non-secure custody of the juvenile the same day.

An adjudicatory hearing was held on 20 March 2013. A putative father was represented at the hearing by counsel, but had been excluded as the biological father. Upon finding out that the putative father was not the biological father of X.M.E.R., respondent-mother was unable to name with certainty the identity of the father. On 19 April 2013, respondent-mother consented to an adjudication of dependency based upon the allegations set forth in the juvenile petition. The allegation of neglect was dismissed.

A dispositional and permanency planning hearing was held on 9 and 11 October 2013. Respondent-father was present in court after DNA testing completed in February 2013 determined that he was the biological father of the

juvenile. The court cited respondent-mother's criminal convictions relating to J.L.'s death, the fact she did not currently have custody of any of her children, her continued poor decision-making, and concluded that DSS should cease reunification efforts. The permanent plan for the juvenile was set as reunification with respondent-father. At a subsequent permanency planning hearing, the court modified the plan as to respondent-father, changing it to adoption with a concurrent plan of reunification.

Another permanency planning hearing was held on 23 April 2014. The court found that respondent-father had not visited the juvenile since January, and had attended only 50% of his visits prior to that time. Respondent-father's explanation was that he had outstanding warrants for his arrest and had been told he would be arrested during his visits. The trial court ceased reunification efforts and changed the permanent plan for the juvenile to adoption only.

On 6 January 2014, DSS filed a motion to terminate respondents' parental rights. Following a hearing for the motion on 2 and 3 September 2014, the trial court entered an order on 26 November 2014 in which it determined that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (3), (6), and (8) (2013) to terminate respondent-mother's parental rights. The trial court concluded that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (3), and (5) to terminate respondent-father's parental rights. The trial court further concluded that it was in the best

interests of the juvenile that respondents' parental rights be terminated. Accordingly, the trial court terminated their parental rights. Respondents appeal.

## II.    Respondent-Mother's Appeal

### A.    Petition for Writ of Certiorari

On 9 March 2015, respondent-mother filed a petition for writ of certiorari with this Court seeking review of the order ceasing reunification efforts. "At any hearing at which the court orders that reunification efforts shall cease, the affected parent, guardian, or custodian may give notice to preserve the right to appeal that order in accordance with G.S. 7B–1001." N.C. Gen. Stat. § 7B–507(c) (2013). Pursuant to N.C. Gen. Stat. § 7B-1001, where a parent has properly preserved their rights to appeal an order ceasing reunification efforts, this Court:

> shall review the order to cease reunification together with an appeal of the termination of parental rights order if all of the following apply:
>
> 1. A motion or petition to terminate the parent's rights is heard and granted.
>
> 2. The order terminating parental rights is appealed in a proper and timely manner.
>
> 3. The order to cease reunification is identified as an issue in the record on appeal of the termination of parental rights.

N.C. Gen. Stat. § 7B-1001(a)(5) (2013).

Here, respondent-mother satisfied subsections 2 and 3 by properly appealing the order terminating her parental rights, and by amending the record on appeal to identify the order ceasing reunification efforts as an issue on appeal. Respondent-mother, however, failed to file timely notice of her intent to preserve her right to appeal the trial court's order ceasing reunification efforts. *See* N.C. Gen. Stat. § 7B–507(c). Consequently, respondent-mother has lost her right to appeal this order.

Although respondent-mother has lost her right to appeal, this Court may, in its discretion, issue a writ of certiorari "when the right to prosecute an appeal has been lost by failure to take timely action." N.C.R. App. P. 21(a)(1) (2015). Accordingly, in our discretion, we grant respondent-mother's petition for writ of certiorari for the purpose of considering her contentions regarding the order ceasing reunification efforts.

### B. Cessation of Reunification Efforts

Respondent-mother first argues that the trial court erred by ceasing reunification efforts. We disagree.

"This Court reviews an order that ceases reunification efforts to determine whether the trial court made appropriate findings, whether the findings are based upon credible evidence, whether the findings of fact support the trial court's conclusions, and whether the trial court abused its discretion with respect to disposition." *In re C.M.*, 183 N.C. App. 207, 213, 644 S.E.2d 588, 594 (2007).

Permanency planning hearings are required after custody of a juvenile is removed from a parent, guardian, or custodian. N.C. Gen. Stat. § 7B-906.1(a) (2013). "At the conclusion of each permanency planning hearing, the judge shall make specific findings as to the best plan of care to achieve a safe, permanent home for the juvenile within a reasonable period of time." N.C. Gen. Stat. § 7B-906.1(g). That plan may include an order for DSS to cease reunification efforts with a parent pursuant to N.C. Gen. Stat. § 7B-507(b), which states:

> In any order placing a juvenile in the custody or placement responsibility of a county department of social services, whether an order for continued nonsecure custody, a dispositional order, or a review order, the court may direct that reasonable efforts to eliminate the need for placement of the juvenile shall not be required or shall cease if the court makes written findings of fact that:
>
> (1) Such efforts clearly would be futile or would be inconsistent with the juvenile's health, safety, and need for a safe, permanent home within a reasonable period of time[.]

N.C. Gen. Stat. § 7B-507(b) (2013).

Here, the trial court made the following findings regarding the futility of continuing the reunification efforts and the reasons that continuation was inconsistent with the child's health, safety and need for a safe, permanent home:

> a. The mother's convictions for Involuntary Manslaughter pertaining to the death of one of her own juveniles in 2006, also [felony] Child Abuse for the same juvenile and a [misdemeanor] Child Abuse for another juvenile living in the home with her from 2006. Ultimately, she

- 6 -

pleaded guilty in 2009 to those offenses.

b. The mother's then boyfriend was never charged.

c. The mother's statements to the police, when she was being interrogated, indicating, "In trying to determine what could have happened to cause six skull fractures to her child, that the child fell off of the sofa (because the child has fallen off the sofa before), subsequently, indicating that the other child in her home, could have caused the six skull fractures because the mother's mother indicated that her niece had seen that child [] hit the baby with a crib toy." The mother admitted to some shaking of the infant in the police report. The Court is fully aware that a crib toy would not cause six skull fractures to an infant's head.

d. What is also concerning and the Court finds to be futile and would make it inconsistent with the juvenile's health, safety and need for a permanent home, is that the juvenile that died was an infant and this juvenile in question is an infant.

e. The mother relinquished her rights to another juvenile, who was subsequently adopted, another juvenile is in the custody of his father, and two other juveniles are placed in the guardianship of the maternal aunt[.]

f. The mother does not have custody of any of her biological children.

g. It appears that there has been a brief period, – considering that the first juvenile was born April 18, 2000 – for the majority of these juveniles' lives where she has not parented them, and to this day, she does not have the juveniles and is not parenting them to date.

h. The mother has not and is not now accepting responsibility for her actions leading to the death of her

> infant in 2006, and there are no services which Department of Social Services can identify and provide to her with a lack of responsibility.
>
> i. The Court is concerned that the mother is not able to provide a safe home for the juvenile.

Based on these findings, the Court concluded that reunification could not be accomplished in a " 'reasonable period of time'. . . based on the juvenile's death in 2006, and it is now 2013, and the mother is no further today in accepting responsibility for her actions and acknowledgement."

We initially note that respondent-mother does not challenge the bulk of the trial court's findings of fact, and thus we are bound by them. *See Koufman v. Koufman*, 330 N.C. 93, 97, 408 S.E.2d 729, 731 (1991) (unchallenged findings are presumed to be supported by competent evidence and are binding on appeal). These unchallenged findings demonstrate that respondent-mother was convicted of involuntary manslaughter and felony child abuse relating to the death of a child in her care. The findings also demonstrate that respondent-mother has several other children, none of whom remain in her custody.

Respondent-mother's arguments primarily concern her "acceptance of responsibility" for J.L.'s death. Respondent-mother contends that the trial court abused its discretion in ceasing reunification efforts because: (1) she accepted responsibility by entering an *Alford* plea of guilty to felony child abuse and involuntary manslaughter; (2) her prior convictions relating to another juvenile's

death due to abuse in 2006, by itself, were insufficient to support an order ceasing reunification efforts based on futility; (3) respondent-mother was not required to accept responsibility in her case plan; (4) the trial court never defined what it meant by acceptance of responsibility; (5) the trial court should not be permitted to base cessation of reunification efforts on her trial strategy from her prior criminal case; and (6) she was in substantial compliance of her case plan. We are not persuaded.

Regardless of respondent-mother's criminal strategy, her *Alford* plea, or her case plan, we conclude the trial court properly concluded that reunification efforts should cease. Respondent-mother's parenting capacity/psychological evaluation, completed prior to the permanency planning hearing, adequately demonstrates the trial court's concerns regarding respondent-mother's failure to accept responsibility for her actions. The report states:

> [Respondent-mother] referred to the death of her son, [J.L.], in 2006. The medical report indicated that he died from a blunt force trauma to the head. The trauma resulted in skull fractures and he died. The next period of time was confusing and stressful for [respondent-mother] as everyone tried to determine what had happened. The police department believed that [respondent-mother] had confessed to shaking [J.L.] too hard, an act that may have prompted his death. However, [respondent-mother] does not believe that she admitted this. Instead, she had asked a question about whether a baby could have fractures from shaking. [Respondent-mother] remembered being confused and agitated at the time. She may have responded to a follow-up question from them with "Whatever the f[] you say." This response may have been interpreted as a confession. [Respondent-mother] stated

that she may have been negligent at the time. She added, "I've realized the error of my ways." However, she did not explain further what she meant by this. *She reported that what actually happened to [J.L.] remains a mystery.*

(Emphasis added.) The court additionally expressed concern that respondent-mother was still making "poor decisions," as demonstrated by the fact that she was again pregnant, but not in a relationship. Moreover, the court cited the fact that respondent-mother did not have custody over any of her children. The evidence and the trial court's findings demonstrate respondent-mother's failure to take responsibility for her actions, her history of poor parenting as exemplified by her failure to have custody of any of her children, and her continued poor decision-making, all of which supports the trial court's determination that reunification would be futile and inconsistent with the health, safety, and welfare of the juvenile.

Respondent-mother additionally argues that the trial court erred by ceasing reunification efforts pursuant to N.C. Gen. Stat. § 7B-507(b)(4). However, because we conclude the trial court properly ceased reunification efforts pursuant to N.C. Gen. Stat. § 7B-507(b)(1), we need not address respondent-mother's argument concerning cessation of reunification efforts under N.C. Gen. Stat. § 7B-507(b)(4). *See* N.C. Gen. Stat. § 7B-507(b)(1)-(4) (stating the four grounds for cessation of reunification efforts in the alternative). Accordingly, we conclude the trial court did not err by ceasing reunification efforts.

C.     Termination of Parental Rights

Respondent-mother next argues the trial court erred by concluding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(8) to terminate her parental rights.  N.C. Gen. Stat. § 7B-1111 sets out the statutory grounds for terminating parental rights.  A finding of *any one* of the separately enumerated grounds is sufficient to support termination.  *In re Taylor*, 97 N.C. App. 57, 64, 387 S.E.2d 230, 233-34 (1990) (emphasis added).

Here, in addition to finding that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(8) to terminate respondent-mother's parental rights, the trial court also found that grounds existed pursuant to N.C. Gen. Stat. § 7B-1111(a)(1), (3), and (6) to terminate her parental rights.  Because respondent-mother does not challenge these additional grounds, they are conclusive on appeal.  Consequently, we need not address respondent-mother's argument.  *See In re P.L.P.*, 173 N.C. App. 1, 8, 618 S.E.2d 241, 246 (2005) ("where the trial court finds multiple grounds on which to base a termination of parental rights, and 'an appellate court determines there is at least one ground to support a conclusion that parental rights should be terminated, it is unnecessary to address the remaining grounds.' ") (quoting *In re Clark*, 159 N.C. App. 75, 78 n. 3, 582 S.E.2d 657, 659 n. 3 (2003))), *aff'd per curiam*, 360 N.C. 360, 625 S.E.2d 779 (2006).  Accordingly we affirm the trial court's order terminating her parental rights.

II.     Respondent-Father's Appeal

- 11 -

Respondent-father's counsel has filed a no-merit brief in which she states that she has made a "conscientious and thorough review of the record, relevant case law and statutes," and was unable to identify any issues of merit on which to base an argument for relief on appeal. Pursuant to Rule 3.1(d) of the North Carolina Rules of Appellate Procedure, counsel requests that this Court conduct an independent examination of the case. In accordance with Rule 3.1(d), counsel wrote respondent-father advising him of counsel's inability to find error, her filing of a "no-merit" brief, and of respondent-father's right to file his own arguments directly with this Court within thirty days of the date of the filing of the no-merit brief. Respondent-father has not filed his own written arguments.

After carefully reviewing the transcript and record, we are unable to find any possible prejudicial error in the trial court's order terminating respondent-father's parental rights. Accordingly, we affirm.

AFFIRMED.

Judges BRYANT and INMAN concur.

Report per Rule 30(e).